# FEDERAL POWER COMMISSION *v.* TENNESSEE GAS TRANSMISSION CO. ET AL.

No. 48.   Argued October 17, 1962.—Decided December 3, 1962.*

*Ralph S. Spritzer* argued the cause for petitioner in No. 48.   With him on the briefs were *Solicitor General Cox, Assistant Attorney General Orrick, Acting Assistant Attorney General Guilfoyle, Morton Hollander, Richard A. Solomon, Howard E. Wahrenbrock, Luke R. Lamb* and *Peter H. Schiff.*

*Charles S. Rhyne* argued the cause for petitioner in No. 50.   With him on the briefs were *David W. Craig, Herzel H. E. Plaine* and *Edward D. Means, Jr.*

---

*Together with No. 50, *Pittsburgh* v. *Tennessee Gas Transmission Co. et al.*, also on certiorari to the same Court.

*Harry S. Littman* argued the cause for Tennessee Gas Transmission Co., respondent. With him on the briefs were *William C. Braden, Jr., Jack Werner* and *Harold L. Talisman.*

*Brooks E. Smith* argued the cause for Manufacturers Light & Heat Co. et al., respondents. With him on the briefs were *William Anderson, Alfred A. Green* and *Herbert W. Bryan.*

*David Stahl,* Attorney General of Pennsylvania, and *Herbert E. Squires* filed a brief for the Commonwealth of Pennsylvania et al., as *amici curiae,* urging reversal.

MR. JUSTICE CLARK delivered the opinion of the Court.

This case involves the authority of the Federal Power Commission after hearing to order an interim rate reduction as well as a refund of amounts collected in excess thereof where a portion of a previously filed increased rate is found unjustified but the remainder of the proceeding is deferred. Respondent Tennessee Gas Transmission Company, a natural gas company, included within its filed increased rate schedule a 7% over-all return on its net investment. In considering this item [1] along with others involved in the filing, including the allocation of the over-all cost of service among its rate zones, the Commission concluded, after a full hearing, that $6\frac{1}{8}\%$ rather than the filed 7% would be a just and reasonable return. It accordingly required Tennessee Gas to file reduced rates, based on the lower return figure, retroactive to the end of a five-month suspension period, and ordered a refund of the excessive amounts collected since that date. 24 F. P. C. 204. The Court of Appeals, 293 F. 2d 761,

---

[1] On motion of the Commission's staff counsel, the proceeding was divided into two phases: (1) determination of rate of return; (2) determination of other factors, including allocation of rates among zones.

found that the $6\frac{1}{8}\%$ return was just and reasonable. It held, however, by a divided vote, that the Commission erred in ordering an immediate reduction and refund since it had not determined other issues in the proceeding, particularly that of the proper allocation of the over-all costs of the company's services among its six zones. The latter, the court reasoned, might be determinative of the ultimate question of whether the over-all filed rates in each zone were just and reasonable; therefore, the interim order might result in irretrievable loss to the company. The importance of the question in the administration of the Natural Gas Act led us to grant certiorari, 368 U. S. 974. We have concluded that the issuance of the order was an appropriate exercise of the power granted the Commission by the Act.

## I.

Tennessee Gas does not have a system-wide rate applicable to all services regardless of where performed. It has since the early 1950's, with Commission approval, divided its extensive pipeline system into six rate zones with rate differentials. The appropriate allocation of its costs of service among these zones and types of customers was not then decided by the Commission nor agreed upon between the parties, but was left for future decision. It was in this posture that in 1959 Tennessee Gas, pursuant to § 4 (d) of the Natural Gas Act,[2] filed with the Com-

---

[2] 15 U. S. C. § 717c (d):

"Unless the Commission otherwise órders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without

mission proposed increased rates for its six rate zones. The rates were predicated upon a cost of service which included a claim to a 7% rate of return on net investment. At the inception of hearings on the reasonableness of the filed rates the Commission, under its § 4 (e) [3] authority, imposed a five-month suspension period on the proposed increase after which the rates became effective subject to refund of any portion not ultimately justified by Tennessee Gas in the proceedings.

Hearings commenced on February 2, 1960, and Tennessee Gas presented its evidence on cost of service and rate of return. The Commission staff presented evidence on the latter alone and then proposed that the rate of return issue be treated separately from cost of service and allocation of rates among zones. At the time of this proposal to the Commission the zone allocation issue was also pending in another docket in a proceeding involving Tennessee Gas. By motion Tennessee Gas requested that the allocation issue be decided simultaneously with that involving the rate of return. On August 5, 1960, this motion was denied, and four days later the Commission issued the interim order under attack here. It found that a 7% return was excessive and that a 6⅛% rate of return was just and reasonable. This finding was based on the

requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published."

[3] 15 U. S. C. § 717c (e):

"Whenever any such new schedule is filed the Commission shall have authority . . . to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect. . . ."

Commission's determination that Tennessee Gas had failed to justify a rate of return greater than $6\frac{1}{8}\%$. Accordingly, the Commission issued an interim order which disallowed the 7% return, required Tennessee Gas to file appropriate lower rates retroactively to the effective date of the increased rates and ordered refunds of the differences collected since that time. Tennessee Gas does not contest the Commission's determination that a $6\frac{1}{8}\%$ return on its net investment is just and reasonable. It does contend that to require the refunds prior to a determination of cost allocation among its zones of operation might result in its being unable to realize this return during the refund period. In this connection it points out that the rates as finally determined might, in some of its zones, be above the rates collected less the refund ordered. This would result in Tennessee Gas not being able to recoup a return of $6\frac{1}{8}\%$ since it would be unable to collect retroactively the higher rates found appropriate in those zones while it would be required to make full refunds in the remaining lower rate zones.

The Court of Appeals, in setting aside the Commission's order of immediate reduction and refund, found that it was unreasonable and an abuse of discretion to thus splinter the issues, especially since the cost allocation among zones issue was deemed "ripe for decision," [4] and

---

[4] In this connection we note the Commission found:

"Hearings on the cost allocation issue, severed from the other issues in Docket No. G–11980 by Commission order, were concluded on December 17, 1959, and briefing thereon was concluded on April 11, 1960. Tennessee's motion for omission of the intermediate decision on that issue is neither timely nor concurred in by the other parties to the proceeding. Further, while we recognize that an early decision on that issue is desirable, the nature and considerable size of the record, indicates that it would be more practicable in the interests of an early decision and in the interest of effective administration of the Natural Gas Act, that the Presiding Examiner, who has available

a ruling on it was an "essential element in determining whether the filed rates are excessive." The court also questioned whether a hearing confined to the issue of rate of return was such a "full hearing" as § 4 (e) demands prerequisite to a rate-change and refund order.

The Federal Power Commission and the City of Pittsburgh, which is acting in behalf of resident consumers of natural gas, are here in separate cases. Since they raise identical factual and legal issues, we consider the two cases together.[5]

## II.

As all of the respondents admit, there is "no question" as to the Commission's authority to issue interim rate orders. Indeed, such general authority is well established by cases in this Court, *Federal Power Comm'n v. Natural Gas Pipeline Co.,* 315 U. S. 575 (1942); *New England Divisions Case,* 261 U. S. 184 (1923), as well as in the Courts of Appeals. *Panhandle Eastern Pipe Line Co. v. Federal Power Comm'n,* 236 F. 2d 606 (C. A. 3d Cir. 1956); *State Corporation Comm'n of Kansas v. Federal Power Comm'n,* 206 F. 2d 690 (C. A. 8th Cir. 1953). It is true that none of these cases involved an undecided cost allocation issue applicable retroactively. However, in *Natural Gas Pipeline Co.* this Court took pains to point out the fact that

---

knowledge of that record, should proceed with consideration of the evidence and render decision thereon." Unreported order of the Commission issued Aug. 5, 1960.

[5] Respondents Columbia Gas Companies raise a separate point as to their not being permitted to offer evidence in this case as to cost allocation. We note that they had a full opportunity to do so in another proceeding involving the same parties. This contention, therefore, has no merit. This hearing, insofar as it determined that the rate of return was unreasonable, was to that extent and for the purpose of the interim order the "full hearing" contemplated by the statute, even though it did not at that time dispose of the entire case.

"establishment of a rate for a regulated industry often involves two steps of different character, one of which may appropriately precede the other." 315 U. S., at p. 584. Significantly, that case also involved the issue of a fair rate of return and "the adjustment of a rate schedule . . . so as to eliminate discriminations and unfairness from its details." *Ibid.* And the Court specifically found power to order a decrease in rates "without establishing a specific schedule." It declared that the proviso of § 5 [6] authorized the Commission to "order a decrease where existing rates are unjust . . . or are not the lowest reasonable rates." Finally, the Court concluded that § 16 [7] placed discretion

---

[6] 15 U. S. C. § 717d (a):

". . . *Provided, however,* That the Commission shall have no power to order any increase in any rate contained in the currently effective schedule of such natural gas company on file with the Commission, unless such increase is in accordance with a new schedule filed by such natural gas company; but the Commission may order a decrease where existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates."

[7] 15 U. S. C. § 717o:

"The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. Among other things, such rules and regulations may define accounting, technical, and trade terms used in this chapter; and may prescribe the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, the information which they shall contain, and the time within which they shall be filed. Unless a different date is specified therein, rules and regulations of the Commission shall be effective thirty days after publication in the manner which the Commission shall prescribe. Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe. For the purposes of its rules and regulations, the Commission may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters. All rules

in the Commission to "issue . . . such orders . . . as it may find necessary or appropriate to carry out the provisions of this chapter." Here the Commission took similar action directing Tennessee Gas to file a new schedule which would reflect the prescribed $7/8\%$ reduction in the rate of return and, in addition, to refund under § 4 (e) the amounts collected in excess of the lower, substituted charges reflecting the lawful rate of return. The fact that the *Natural Gas Pipeline Co.* case was initiated under § 5 of the Act and the refund provisions of § 4 (e) were not available was, in our opinion, of no consequence since the hazard of not making a profit remains on the company in each instance. "Discriminations and unfairness" if later found present in Natural Gas Pipeline's schedule might have caused it losses just as the refunds might here. In addition, an analysis of the policy of the Act clearly indicates that a natural gas company initiating an increase in rates under § 4 (d) assumes the hazards involved in that procedure. It bears the burden of establishing its rate schedule as being "just and reasonable." In addition, the company can never recoup the income lost when the five-month suspension power of the Commission is exercised under § 4 (e). The company is also required to refund any sums thereafter collected should it not sustain its burden of proving the reasonableness of an increased rate, and it may suffer further loss when the Commission upon a finding of excessiveness makes adjustments in the rate detail of the company's filing. In this latter respect a rate for one class or zone of customers may be found by the Commission to

and regulations of the Commission shall be filed with its secretary and shall be kept open in convenient form for public inspection and examination during reasonable business hours. (June 21, 1938, ch. 556, § 16, 52 Stat. 830.)"

be too low, but the company cannot recoup its losses by making retroactive the higher rate subsequently allowed; on the other hand, when another class or zone of customers is found to be subjected to excessive rates and a lower rate is ordered, the company must make refunds to them. The company's losses in the first instance do not justify its illegal gain in the latter. Such situations are entirely consistent with the policy of the Act and, we are told, occur with frequency. The company having initially filed the rates and either collected an illegal return or failed to collect a sufficient one must, under the theory of the Act, shoulder the hazards incident to its action including not only the refund of any illegal gain but also its losses where its filed rate is found to be inadequate.

Nor do we share the doubts of the Court of Appeals concerning the practicalities of the two-step procedure invoked by the Commission. We cannot see how the severance of the two issues left Tennessee Gas without guidance as to "the extent to which individual rates should be reduced, or to whom refunds are due." 293 F. 2d, at p. 767. The Commission has found that the revised over-all rate schedule should have been calculated on a rate of return of $6\frac{1}{8}\%$ rather than 7%. As a result the over-all rate was to that extent unlawful and refunds were due across the board to all customers in the Tennessee Gas system. The interim order directed their payment. True, the old and undecided zone rate structure under attack as discriminatory was left in effect by this order and survives a bit longer. But the probabilities present in that situation are more than offset by the certainty of the Commission's actions in finding the 7% rate unlawful, fixing the $6\frac{1}{8}\%$ lawful return and giving timely effectiveness, including refunds, to the latter. Perhaps discrimination may later be found in the allocation of cost between

some zones, but it would affect only the customers in those zones while the postponement of the interim order here would be of continuing detriment to all customers in all zones. Moreover, if decreased rates and resultant refunds are later found to be necessary in those isolated instances the Commission has the power to so order upon such finding and the individual lawful rates could at that time be fixed.

Moreover, the use of the interim order technique is in keeping with the purposes of the Act "to protect consumers against exploitation at the hands of natural gas companies . . . ," *Federal Power Comm'n* v. *Hope Natural Gas Co.*, 320 U. S. 591, 610 (1944), and "to underwrite just and reasonable rates to the consumers of natural gas . . . ." *Atlantic Refining Co.* v. *Public Service Comm'n of New York*, 360 U. S. 378, 388 (1959). Faced with the finding that the rate of return was excessive, the Commission acted properly within its statutory power in issuing the interim order of reduction and refund, since the purpose of the Act is "to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges. . . ." *Id.*, at p. 388. To do otherwise would have permitted Tennessee Gas to collect the illegal rate for an additional 18 months [8] at a cost of over $16,500,000 to consumers. True, the exaction would have been subject to refund, but experience has shown this to be somewhat illusory in view of the trickling down process necessary to be followed, the incidental cost of which is often borne by the consumer, and in view of the transient nature of our society which often prevents refunds from reaching those to whom they

---

[8] The cost allocation issue was decided 18 months following the Commission's decision on rate of return, and substantial issues on the cost-of-service question are still unresolved. If the interim order had not been entered the illegal rate would have been in effect 22 months, with an excessive return of some $20,000,000.

are due.[9]  It is, therefore, the duty of the Commission
to look at "the backdrop of the practical consequences
[resulting] . . . and the purposes of the Act," *Sunray
Mid-Continent Oil Co.* v. *Federal Power Comm'n,* 364
U. S. 137, 147 (1960), in exercising its discretion under
§ 16 to issue interim orders and, where refunds are found
due, to direct their payment at the earliest possible
moment consistent with due process.  In so doing under
the circumstances here the Commission's ultimate action
in directing the severance and in entering the interim
order was not only entirely appropriate but in the best
tradition of effective administrative practice.

The judgment of the Court of Appeals is reversed
insofar as it set aside the interim order; otherwise it is
affirmed.

*Reversed in part.*

---

[9] In some of the States refunds due unfound former customers
remain with the company in separate accounts subject to future order;
a larger group escheats such amounts to the State; others permit them
to be used in defraying the cost of the refund; a fourth group has no
problem regarding transients since refunds are prorated among com-
pany customers and credited on future bills; and one State includes
all refunds in future rate reductions.  While refunds are permissible
in cash, most of the States approve plans whereby credits are per-
mitted on future gas bills in proportion to average consumption.