**UNITED FUEL GAS COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 1019*l.*

United States Court of Appeals
Fourth Circuit.

Argued June 3, 1966.

Decided Oct. 4, 1966.

Cyril S. Wofsy, Atty., Federal Power Commission, (Howard E. Wahrenbrock, Sol., Federal Power Commission, on the brief) for respondent.

Richard A. Rosan, New York City, (D. Pierre G. Cameron, Jr., John F. Sisson, New York City, William C. Hart, Washington, D. C., C. E. Goodwin and H. W. Bryan, Charleston, W. Va., on the brief) for petitioner.

Before SOBELOFF and BOREMAN, Circuit Judges, and HEMPHILL, District Judge.

SOBELOFF, Circuit Judge.

Whether the Federal Power Commission's jurisdictional authority over interstate producers and distributors of natural gas is broad enough to permit it to oversee the ultimate distribution of refunds so as to afford complete protection to the ultimate consumers of natural gas is the question underlying this appeal. The immediate issue is the ripeness for review under section 19(b) of the Natural Gas Act[1] of a Commission order directing that refunds to United Fuel Gas Company, generated by a rate settlement agreement entered into by Humble Oil & Refining Company with the Commission, be retained by Humble pending further Commission inquiry into whether

---

1. 15 U.S.C.A. § 717r(b) (1963).

release of the refunds to United would be consistent with the Commission's obligations under the Act.

The same order was attacked by Texas Eastern Transmission Company in the Fifth Circuit, which granted the Commission's motion to dismiss Texas Eastern's petition for review as premature.[2] That case is on all fours with the present one and will be discussed later.[3]

United is an interstate pipeline transmission company which purchases a portion of its natural gas supply from Humble. Both United and Humble are subject to Commission regulation under the Act. The rate settlement agreement filed by Humble required it to refund amounts representing the difference between the rates it charged and those proposed in the agreement. While approving the agreement, the Commission directed Humble to retain the refunds and proposed to conduct a hearing to determine its jurisdictional authority and obligations under the Act to require United and other intermediate purchasers to flow the refunds through to the ultimate consumers, who may have shouldered the burden of Humble's excessive rates. The Commission expressly refrained from deciding whether "a pipeline purchaser from Humble or one down the line in the chain of resales between the producer and the ultimate consumer are * * * entitled as a matter of law or equity to retain all or part of the refunds received from a supplier.",[4] leaving this and related questions for resolution at the proposed hearing.

To narrow the issues, the Commission directed United to file a report outlining its intended disposition of the refunds.[5] United responded that it would adhere to its existing flow through obligations contained in a previously approved settlement agreement. That agreement, however, would not require United to flow through all the refunds retained by Humble, and the Commission therefore ordered release of only that portion which United agreed it was obligated to flow through, directing retention of the remainder pending the outcome of the hearing.[6] From this order, United prosecutes the present appeal.

On February 7, 1966, the Fifth Circuit, speaking through Judge Wisdom, decided *Texas Eastern Transmission Corp. v. F. P. C.*, 357 F.2d 232 (1966), in which this same order was attacked by another interstate pipeline distributor which found itself in an analogous position to United. Texas Eastern is a pipeline customer of United and, under the order, would receive amounts released to United which United was obligated to flow through. Texas Eastern, however, informed the Commission that it considered itself entitled to retain substantially all the refunds to be received from United and the Commission therefore directed United to retain the monies allocable to Texas Eastern.

The overall picture is thus of Humble, the producer, selling a portion of its supply of natural gas to United which, in turn, resold a substantial amount to Texas Eastern. Texas Eastern, itself merely a distributor, sold the gas to other companies which, mediately or immediately, distributed it to the ultimate consumers. Ordinarily, price increases by Humble would be passed on by the intermediate distributors to the ultimate consumers. When the specific increases involved here were rescinded, the Commission undertook, by the retention order, to maintain the status quo pending a further look into the ultimate disposition of the refunds. The Commission

**2.** Texas Eastern Transmission Corp. v. Federal Power Comm'n, 357 F.2d 232 (5th Cir. 1966).

**3.** Texas Eastern also sought review of several other refund retention orders. 357 F.2d at 234–235. Their presence, however, in no way undercuts the relevance of that decision to the instant case since all the orders presented the same issue for decision.

**4.** Humble Oil & Refining Co., 32 F.P.C. 49, 52 (1964).

**5.** Humble Oil & Refining Co., 32 F.P.C. 873 (1964).

**6.** Humble Oil & Refining Co., 33 F.P.C. 830 (1965).

proposed to hold a hearing to determine whether it had authority to control the disposition of the refunds and, if so, whether it should in the circumstances require flow through to the ultimate consumers. The Commission indicated that at the hearing the companies could produce evidence bearing on whether they actually passed the increases on or absorbed them, and any other pertinent evidence.

The Fifth Circuit, adopting Justice Frankfurter's formulation of the test of ripeness,[7] held that "the hardship of denying relief to the petitioners is not sufficient to overcome the factors supporting the prerequisite of final administrative action on the issues." 357 F.2d at 237–238. The Commission had not yet ruled on whether it possessed the questioned authority over refunds nor had it expressed any opinion on the manner of the exercise of such authority as it might find to exist. The retention order was merely a mechanism to enable it to investigate the problem. Review at this time, the Fifth Circuit thought, would require the court to step into the Commission's shoes and intrude itself into the administrative process prematurely—before the Commission's expertise had been brought to bear on the issues.

"Review of an innovative administrative decision is difficult enough for a court even with the benefit of adequate administrative findings based on a hearing. Here we have before us only the Commission orders, the settlement agreements, and some other administrative materials—all raw materials. Review of the challenged orders would require the Court to construe settlement agreements previously approved by the Commission, and, in empty space, to find, among other facts, that petitioners would not receive a windfall. Review would force the Court to examine, without Commission assistance, hundreds of pages of tariff sheets, revenue reports, rate schedules, and refund calculations. The Court's original determination of the Commission's authority based upon these raw materials would turn the administrative process upside down and tend to stultify the agency's power to adapt its statutory authority to changing realities." 357 F.2d at 238.

Assuming that the Commission would ultimately determine that Texas Eastern was entitled to retain the refunds, the court nevertheless felt that loss of the use of the monies during the pendency of the hearing was overridden by

"the public's interest in Commission procedures and process that will produce reasonable rates. The dimensions of the problem, including particularly the responsibility of the Commission to discharge its statutory duty to protect the public interest, require that the Commission give full consideration to all of the relevant legal and policy issues. We do not see how the Commission can approach that purpose without a searching inquiry into all of the conflicting considerations against a backdrop of cold facts, practical consequences, and statutory purposes." 357 F.2d at 239. See also Humble Oil and Refining Co. v. F. P. C., 236 F.2d 819 (5th Cir. 1956).

After reviewing the case law, the court concluded that "the state of the law, as well as the procedural posture of the controversy, argues strongly for judicial hands off until the Commission has, in the first instance, decided where it wants to go and what it wants to do with refunds." 357 F.2d at 242.

■■ We agree with the Fifth Circuit and therefore dismiss United's petition for review as premature. "[T]he Act contemplates a review * * * of definitive orders entered after hearing and upon completion of the administrative process." 357 F.2d at 239. The rationale of postponement of review is to

---

7. "Whether 'justiciability' exists * * * has most often turned on evaluating both the appropriateness of the issues for decision by courts and the hardship of denying judicial relief." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 156, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

allow the Commission to undertake the initial, comprehensive investigation and analysis of the complex issues arising in the course of regulation of the natural gas industry. The purpose of the Act is to insure reasonable rates to the ultimate consumers of natural gas. The Commission's responsibility does not necessarily end when it orders refunds of excessive rates charged at the well-head. Price increases may have been passed on by intermediate distributors to the ultimate consumers; retention by the distributor will not therefore fully rectify the unlawful exactions.[8] In an analogous area, of the disposition of court-impounded refunds, the Supreme Court has held that where distributors seeking return of the fund are subject to Commission jurisdiction, "the task of the federal court in distributing the fund * * is to undo the wrong which its process has caused." F. P. C. v. Interstate Natural Gas Co., 336 U.S. 577, 584, 69 S.Ct. 775, 779, 93 L.Ed. 895 (1949). The court must determine who bore the burden of the excessive rates and distribute the refunds accordingly. In *Interstate,* the

fund was created by a federal court order staying implementation of a Commission ordered rate reduction pending review of the Commission's order and requiring Interstate to deposit into court the difference between payments under existing rates and those required by the order. In the present case, the refunds were created by the Commission's own processes. Whether its jurisdiction is as extensive as that of the federal court under *Interstate* is an open question.[9] The Commission has not as yet expressed an opinion; nor has it even decided if it will seek flow through since it has not yet had the opportunity to determine whether the excessive rates were passed on or absorbed by the distributors. In sum, there is no administrative record on which this court can intelligently decide these complex issues. To enable the Commission to pass on these and related questions, we grant the Commission's motion to dismiss United's petition for review.

Motion granted; petition for review dismissed.

8. The Supreme Court has recently expressed concern over whether refunds of excessive rates ever reach the ultimate consumer. In Federal Power Comm'n v. Tennessee Gas Transmission Co., 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199 (1962), the Court upheld an interim rate reduction order in lieu of permitting the proposed rates to continue in effect, subject to refund. The Court stated that:
    True, the exaction would have been subject to refund, but experience has shown this to be somewhat illusory in view of the trickling down process necessary to be followed, the incidental cost of which is often borne by the consumer, and in view of the transient nature of our society which often prevents refunds from reaching those to whom they are due [footnote omitted]. 371 U.S. at 154–155, 83 S.Ct. at 210.

9. The complexity of this area of the law is illustrated by the fact that the Court, in Interstate, preserved its holding in Central States Electric Co. v. City of Muscatine, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801 (1945). The Court distinguished Muscatine as a case where a local power company whose rates were not subject

to Commission regulation sought possession of the fund. In Muscatine, the Court held that a federal court's jurisdiction is limited to determining ownership of the fund as between the pipeline company imposing the excessive rate and the distributing company paying it. Once federally approved rate reductions take effect, state regulatory agencies are empowered to pass these benefits on to the ultimate consumers by adjusting the rates of companies within their jurisdiction. Federal protection of the ultimate consumers was limited to retention of the fund for a reasonable time to allow interested parties to litigate the consumer's rights in the fund in an appropriate state tribunal. Mr. Justice Black, however, dissented on the ground that as the injury to the ultimate consumers resulted from a stay granted by a federal court, federal law can and should redress the injury. The majority and dissenting opinions in Pennsylvania Water & Power Co. v. Federal Power Comm'n, 92 U.S.App.D.C. 125, 203 F.2d 219 (D.C.Cir.1953), reflect the problem involved in construing Interstate and Muscatine. See also Cities Service Gas Co. v. Federal Power Comm'n, 176 F.2d 548 (10th Cir. 1949).