**GEORGIA POWER COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 23753.

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1967.

———◆———

Tench C. Coxe, William H. Schroder, Harold C. McKenzie, Jr., Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., for petitioner.

Carlton C. McCamy, McCamy, Minor, Vining & Phillips, Dalton, Ga., John T.

Miller, Jr., Washington, D. C., for City of Dalton, Ga.

L. Clifford Adams, Jr., Heard & Leverett, Elberton, Ga., for the Power Section, Georgia Municipal Assn.

Northcutt Ely, C. Emerson Duncan, II, Ely & Duncan, Washington, D. C., for American Public Power Assn.

Howard E. Wahrenbrock, Sol., Richard A. Solomon, Gen. Counsel, William H. Arkin, Atty., FPC, Drexel D. Journey, Asst. Gen. Counsel, Sandra Strebel, Atty., FPC, Washington, D. C., for respondent.

Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District Judge.

AINSWORTH, Circuit Judge:

The question for decision is whether the Federal Power Commission erred in ordering Georgia Power Company to eliminate from certain wholesale electric energy schedules those provisions relating to resale load ceiling and small resale credits, held by the Commission to be unjust, unreasonable and unduly discriminatory, without an additional hearing by the Commission to refix the rate before terminating these provisions.

Georgia Power filed this petition for review of an order of the Federal Power Commission under authority of Section 313(b) of the Federal Power Act (16 U.S.C. § 825l(b)). Georgia Municipal Association, American Public Power Association and several Georgia municipalities have intervened.

These proceedings were originally begun by the Commission upon its own motion under the provisions of Sections 205 and 206 of the Federal Power Act (16 U. S.C. §§ 824d, 824e). The Commission made it clear that its purpose was to determine the lawfulness of the restrictive service provisions and that it did not question whether Georgia Power's schedules of filed rates to municipalities were unjust or unreasonable for reasons of rate level. The questioned provisions were contained in Georgia Power's Standard Form WR-4, Contract for Wholesale Service of Electric Energy to Georgia Municipalities, and were found in forty-two of the fifty contracts on this form. The same rate was made applicable to all of the municipalities, but as to eight of them, there was no limitation as to the quantities of power which might be resold. The resale ceilings were designed by Georgia Power to limit the sale by municipalities of power to large loads in their service areas. However, the load ceilings were not uniformly enforced among the municipalities. The Commission's hearing examiner conducted an exhaustive eight-day hearing after which he rendered his findings that the questioned contract provisions were unlawful and unreasonable and ordered their deletion. At the hearing Georgia Power did not defend the resale credit provision. Thereafter, the Commission substantially upheld its examiner, stating in its written opinion that the resale load ceiling provision and the resale credit provision were unjust, unreasonable and unduly discriminatory and therefore unlawful. It said that the resale load ceiling provision was unduly discriminatory because it did not apply to all of the fifty municipal customers and was not applied uniformly even to those towns subject to them. It found that it was not normally consistent with the public interest for a wholesale supplier of electric power to restrict the manner in which its customer may resale the power and that Georgia Power had shown no special facts or circumstances which would establish the reasonableness of these restrictions.

On appeal Georgia Power has not contested the deletion of the questioned contract provisions involving resale load ceiling and small resale credits in its schedules. However, it contends that the Commission's action is arbitrary and capricious and violates Section 206(a) of the Federal Power Act because the Commission did not, when it ordered deletion of the restrictive provisions, also order an additional full hearing to determine just and reasonable rates and contract terms to be observed in the future.

Georgia Power argues that it was thus deprived of due process under the Fifth Amendment in that it was not accorded its constitutional right to a full hearing which is essential to the validity of the Commission's action. It argues that the relationship between the rate level and the resale load limitation in the contract is such that the deletion of the load limitation without a corresponding upward adjustment of rates would virtually destroy the existing contracts and impose new contracts with rates whose reasonableness was unsupported by any evidence. Georgia Power states that it received more than $800,000 of revenue from direct service to large loads in 1965 than it would have received if it served those loads indirectly through the municipalities whose WR-4 rate was set at a lower level.

The Commission declined to order the additional hearing which Georgia Power demanded but held that under Section 205 of the Federal Power Act the Company "may, at any time, submit for filing new rate schedules, reflecting increased rates, unless legally precluded from doing so by contractual commitments." The Commission's position is that there was no impropriety in ordering an unlawful practice such as it found in the resale load ceiling and resale credit provisions eliminated from the rate schedules without the necessity of an accompanying full-blown rate case and that it had the authority to terminate that practice which it held is not inseparable from a major rate case. It pointed out that Georgia Power had an opportunity at the hearing to show what its economic losses would be with the elimination of the deleted provisions but totally failed to do so. It contended that there is substantial evidence in the record to warrant affirmance of its opinion which is all that is required under Section 313(b) of the Federal Power Act.

Section 206(a) of the Federal Power Act is the provision which authorizes the Commission to determine reasonable rates, regulations and practices of public utilities under its jurisdiction. The section reads as follows:

"Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order."

There is nothing in Section 206(a) which prohibits the Commission from eliminating an unlawful practice without simultaneously holding a full rate hearing to prescribe a proper rate. We perceive no inseparability of the forbidden practices from the Company's rates. The Commission is fully authorized by this section to deal solely with an unjust or unreasonable practice as such. In Federal Power Comm. v. Tenn. Gas Transmission Co., 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199 (1962), the Supreme Court upheld the Commission's action in ordering an increased rate immediately reduced by interim order without awaiting completion in a rate proceeding of the hearing on the allocation of the overall costs of the company's services among its zones of service. The analogy is pertinent here and the Commission is fully authorized to end the unlawful restrictions on service involved here without awaiting completion of a full rate case.

Georgia Power strongly urges that the relationship between the load limitation provision and its revenue was established by the evidence, but it failed to offer any evidence tending to show that its WR-4 rate was unreasonably low or that it would sustain any loss by elimination of the restrictive provisions. In its supplemental brief it concedes that

now that these provisions have been eliminated and are in actual operation there has been no immediate revenue loss but it contends that the unregulated municipalities will take advantage of the level of the WR-4 rate, as compared to Georgia Power's state-regulated industrial rates, and the flexibility which the municipalities thus enjoy place them in a position to undersell it, and can be expected to do so.

These contentions do not avail petitioner because they leave open the question of Georgia Power's net income, return on investment, whether the municipal rates are unreasonably low and require speculation that the large industrial sales of electric energy over the previous ceiling limitations will be shifted to the municipalities in the future. When and if this occurs and the Company is then in a position to prove that its sales to municipal distributors do not pay their own way at the present rate, or that losses from too low a rate on such sales are not absorbed by excess revenues from other sales, or that continuance of the present municipal rate would deprive Georgia Power of a fair return on its investment, it will be appropriate for Georgia Power to file Section 205 proceedings with the Federal Power Commission and secure appropriate and necessary relief.

 Both the Commission and the Company argue the relevance of the Supreme Court's decision in Federal Power Comm. v. Sierra Pacific Power Co., 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). The Commission contends that the case is authority for the proposition that it does not follow that a public utility may not itself agree by contract to a rate affording less than a fair return or if it does so is entitled to be relieved of its improvident bargain; and that a contract may not be said to be either unjust or unreasonable simply because it is unprofitable to the utility. Georgia Power contends that under *Sierra,* if the integrity of such contracts is upheld so that a unilateral filing by the Company of an increased rate is im-

possible, unless the rate is so low as to adversely affect the public interest, this gives support to its contention that the Commission should have held further hearings as requested for the purpose of correcting contractual inequities resulting from the deletion of the load limitation. However, we do not find it necessary to apply the *Sierra* doctrine in this case. Our holding here is merely that the Commission was correct in deleting the restrictive service provisions without the necessity of an additional rate hearing to determine a fair and reasonable rate for the Company in its schedules without the deleted provisions. The Commission has eliminated an unlawful practice which we hold is fully authorized by Section 206(a) without the necessity of a full rate hearing. If additional revenues are necessary to provide a fair rate of return, the Commission's door is open to Georgia Power for the filing of necessary proceedings under the Act, all of which is very clearly pointed out in the Commission's order. Up to now, the Company has not seen fit to avail itself of this right.

Affirmed.