**KANSAS–NEBRASKA NATURAL GAS COMPANY, INC., Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**CENTRAL KANSAS POWER COMPANY, INC., Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

Nos. 75–1669, 75–1752.

United States Court of Appeals,
Tenth Circuit.

Argued Feb. 25, 1976.

Decided April 19, 1976.

John P. Furman, Washington, D. C. (J. Robert Wilson, Larry D. Hall, Hastings, Neb., Alvin J. Meiklejohn, Jr., Denver, Colo., Richard Jones, Wichita, Kan., with him on the brief), for petitioner, Kansas-Nebraska Natural Gas Co., Inc.

James C. Mordy, of Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo. (Richard A. Solomon and Wilner & Scheiner, Washington, D. C., with him on the brief), for petitioner, Central Kansas Power Co., Inc.

J. Paul Douglas, Atty., F. P. C. (Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Sol., with him on the brief), for respondent, Federal Power Commission.

James M. Van Vliet, Jr., Chicago, Ill. (David C. Wheeler, and Schiff, Hardin & Waite, Chicago, Ill., with him on the brief), for Nebraska Distributor Group of Intervenors.

Joe A. Greenlief, Cedar Rapids, Iowa, for intervenor, Iowa Electric Light & Power Co.

Before SETH, BARRETT and DOYLE, Circuit Judges.

SETH, Circuit Judge.

The petitioner, Kansas-Nebraska Natural Gas Company, Inc., filed for a rate increase under 15 U.S.C. § 717c, with the Federal Power Commission for its jurisdictional sales. These sales represented a relatively small portion of its overall business. The rates had previously been determined in a proceeding in 1961. The FPC issued an Opinion 731 and, on rehearing, Opinion 731–A, which changed cost allocations in the two zones; used a different formula for allocating transmission costs; changed the classification of gathering costs; changed rate design, and excluded some of the capitalization for rate of return computations.

The petitioner seeks a review of the determinations by the Commission. The changes made by the FPC were in several of the elements in the ratemaking process, and covered a past period in which the increased rates had been put in effect by the company, subject to the possibility of refund. The consequence of the FPC orders was to cause a refund. The filing for Zone 2 had developed revenues in excess of the costs allocated to that zone under the FPC orders. Another consequence was an undercollection in Zone 1, as the rates filed did not generate a return therein sufficient to meet the costs allocated to Zone 1 under the FPC orders.

Kansas-Nebraska proposed that the allocation of transmission costs, to introduce the factor of distance, use the product of volume times distance, the Mcf mile method. This method, it suggested, should be used in dividing the total transmission costs of its system between jurisdictional customers and others. Thus the ratio of the total Mcf miles of jurisdictional customers to the total on the system would determine the allocation. It was then necessary to divide the jurisdictional portion of transmission costs among the jurisdictional customers on some basis which did not require a mileage computation and rate for each one. This allocation was to be done by zones. Zone 1 was established for Kansas customers and Zone 2 for those in Nebraska and Colorado. The division of the total jurisdictional transmission costs between the two zones was made on the basis of Mcf miles of customers in each zone. The costs so allocated, uniform rates for each zone were devised to include all factors.

The basic issue as to the sharing of transmission costs raised by Kansas-Nebraska is whether the decision of the FPC in departing from the Mcf mile method and directing a new one had a rational basis.

The FPC in its opinion 731 stated that the Mcf mile formula as advanced by Kansas-Nebraska was "unduly discriminatory" in Zone 2 as to jurisdictional customers. The FPC also stated that the zones as created led to "inequitable" results. In its decision, however, the FPC did not change the zones, but did change substantially the design of the rates. The FPC also did not permit the Mcf mile method to allocate transmission costs between jurisdictional and nonjuris-

dictional customers. The FPC in the opinion recognized the theory that the length of the lines through which the gas is transmitted to a customer is a basic element in cost of service. Opinion 731 however stated: "We have found that mileage is no longer a controlling factor in the allocation of costs between jurisdictional and non-jurisdictional business and between rate zones."

After the FPC hearing and on rehearing, Kansas-Nebraska submitted a new Mcf mile proposal, and suggested that new zones be created or zone lines changed. In response, the FPC in the opinion on rehearing, 731–A, stated in effect that the new Mcf mile study of Kansas-Nebraska contained or raised problems which needed to be "more fully explored," and that there might be other problems therein which would ". . surface with a complete record on the issue." The FPC stated again that the record was not adequate to consider suggested new zone boundaries. The Commission rejected the idea that the record be then completed in the same case as it would unduly prolong the case then pending for some four years. New rates below those sought by Kansas-Nebraska were provided by the Commission for the zones. But to avoid an immediate impact of a change in rates paid, it kept the zones as they were but to reduce the difference between zones under the new plan placed fifty per cent on sales volume and fifty per cent on historical revenues. The refunds were ordered based on this new rate structure for the period in issue.

Only a part of the ratemaking process is in issue here. Certain elements are contested. The argument of Kansas-Nebraska and Central Kansas Power centers on the departure by the FPC from the Mcf mile method without advancing a clear reason for so doing, or without a change in circumstances. Also the argument is directed to the closing of the case on adjustment of zone boundaries in the face of a statement in effect that further hearings were necessary. The FPC on this point said ". . . based on the data contained in the record, it would be most difficult to draw a zone line that would be meaningful and reasonable in this case."

■ We do not propose to discuss at any length the basic standards to be applied in this review of the FPC orders under 15 U.S.C. § 717r(c). It would seem sufficient to refer to the proposition that the action of the FPC must be set against the grounds or reasons for such action as expressed in the orders and opinions rather than for the court to seek out a "better" or different basis. *Texas Gas Transmission Corp. v. Shell Oil Co.,* 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208; *Securities & Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995. As to the presumption of correctness on review, see *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312; *Amoco Production Co. v. FPC,* 491 F.2d 916 (10th Cir.). As to the overall purpose and effect of the orders considered, *see FPC v. Natural Gas Pipeline Co.,* 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 10370. Perhaps one of the more pertinent cases is *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206, which gave the Commission wide latitude as to allocation formulas, and which also contained the colorful admonition to the reviewing court to determine whether or not the ". . . path which it followed can be discerned," from the FPC opinions and orders.

The petitioner urges that there is some binding precedent in the prior orders of the FPC using the Mcf mile method. The argument is that there can be no departure from the method if there is no substantial change in the facts.

■ This formula for allocation of transmission costs between jurisdictional customers and non-jurisdictional customers, and among the jurisdictional customers is but one element of the total ratemaking. The theories used by the FPC in arriving at the end result are peculiarly within its discretion. There is an interaction among the customers, the areas served, and the jurisdictional and non-jurisdictional customers which must be evaluated in the exercise of overall regulatory authority. This has to be

one of the basic functions of the Commission. *See Colorado Interstate Gas Co. v. FPC*, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206. In any event, Opinion 731 does expressly find an overall difference in conditions as compared to the 1961 consideration of the formula. It found no material difference in some particulars, but in the application of the formula the overall differences were significant. These are sufficient reasons to support the departure from the Mcf mile formula for the period under consideration. The Commission did not foreclose the possibility that some variation could later be demonstrated to be proper.

Opinion 731 states expressly " . . . that Kansas-Nebraska's method of applying mileages to its allocation of costs results in unreasonable differences in rates charged to its customers." This is certainly a sufficient finding that a change was required. It was based on factual material in the record, and the examination of particular examples. The quotation above as to rates charged customers apparently refers to both the division between non-jurisdictional and jurisdictional customers and among the jurisdictional customers. The FPC also indicated that it could be possible that an acceptable Mcf mile formula could be devised. This statement is not inconsistent with the conclusion reached as to this particular case.

■ As indicated above, after Opinion 731, Kansas-Nebraska submitted a revised Mcf mile study which was directed mainly to the imputed mileage problem arising from exchanges of gas. This revision was not accepted by the FPC in Opinion 731–A, and it was there stated in effect that "the specific problems," apparent distortions, and anomalies referred to in Opinion 731 were not the only difficulties that might "surface with a complete record on the issue." As a matter of administrative procedure, the Commission was justified in not considering a progressive series of studies in the case; in terminating the proceedings, and in ordering refunds. The FPC indicated that the staff method of allocation would be "adopted subject to a complete

record being developed" in another case. This reference can mean little more than the staff's formula would not necessarily become the answer for the future. These caveats are not of the significance urged by petitioner. The FPC made a determination based on the record before it. It is apparent that the Commission cannot dispose of all the problems before it in any one case. As before any administrative body many issues are decided on a case by case basis, on how the issue arises, and how the record is developed. Again, there comes a point where the record must be closed and the case be decided.

■ As petitioner points out, the matter of new zone boundaries did not arise until Opinion 731 was issued. The FPC therein said: "We . . . find Kansas-Nebraska's present zone structure to be inequitable." The petitioner thus urges that notice should have been given that this issue was to be considered, and further hearings held, before refunds were ordered. This matter again is one which was a basic element in the rates. The fact that it was not changed although inequitable was in the view of the FPC adjusted as to refunds by the staff allocation formula. This is a matter well within the FPC discretion in arriving at a proper basis for refund computation. There was no constitutional right, as respondent urges, to have notice and hearing on such a matter basic to the problem.

■ The FPC made a further change in that it determined that field gathering costs should be treated for ratemaking as a 100 per cent commodity cost. Under the original Kansas-Nebraska two-part rate structure, costs were allocated to "demand" (the peak sales volumes) and to "commodity costs" (sales volume over a period of time). Before this hearing, the gathering costs had been distributed fifty per cent to demand and fifty per cent to commodity. This new allocation was in accord with its current practice followed in most if not all other instances. The FPC here found that Kansas-Nebraska did not demonstrate that its gathering costs were so different from those of other lines as to bring about a

different result. This finding must stand. *Cities Service Gas Co. v. FPC*, 155 F.2d 694 (10th Cir.). *See also* the rehearing order No. 600–A in *El Paso Natural Gas Co.*, 47 FPC 1157. The objection to this treatment of gathering costs is without merit.

We also find no basis for petitioner's objection to the adjustment of Kansas-Nebraska's rate of return on capitalization for jurisdictional rates. This objection relates to the method whereby the Commission computed the capital figure on which a rate of return could be figured. The particular exclusion was of capital stock issued to acquire non-jurisdictional non-utility businesses. This is at most a difference in policy or theory, and the FPC determination was well within its discretion. It is within the limits of *Cities Service Gas Co. v. FPC*, 424 F.2d 411 (10th Cir.), and *El Paso Natural Gas Co. v. FPC*, 47 FPC 1157.

The application of the rates devised by the FPC with the mileage formula adopted to replace the Mcf miles method, and the continuation of the zones resulted in an undercollection during the locked-in period in Zone 1. That is, the collections were less than the cost of service allocated to that zone.

This consequence did not come about entirely from the FPC action as it was at least in part the result of the rate filings made by Kansas-Nebraska which were suspended by Opinion 731. The desired rates were filed by Kansas-Nebraska, and went into effect subject to possible refund. The company took the risk that an undercollection as to one segment might occur. Unfortunately this is not an unusual happening. The Supreme Court in *FPC v. Tennessee Gas Transmission Co.*, 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199 said:

> " . . . In addition, an analysis of the policy of the Act clearly indicates that a natural gas company initiating an increase in rates under § 4(d) assumes the hazards involved in that procedure. It bears the burden of establishing its rate schedule as being 'just and reasonable.' In addition, the company can never recoup the income lost when the five-month

suspension power of the Commission is exercised under § 4(e). The company is also required to refund any sums thereafter collected should it not sustain its burden of proving the reasonableness of an increased rate, and it may suffer further loss when the Commission upon a finding of excessiveness makes adjustments in the rate detail of the company's filing. In this latter respect a rate for one class or zone of customers may be found by the Commission to be too low, but the company cannot recoup its losses by making retroactive the higher rate subsequently allowed; on the other hand, when another class or zone of customers is found to be subjected to excessive rates and a lower rate is ordered, the company must make refunds to them. The company's losses in the first instance do not justify its illegal gain in the latter. Such situations are entirely consistent with the policy of the Act and, we are told, occur with frequency."

This is precisely the circumstance before us as it relates to the two zones. The petitioner for the period concerned took the risk that this would happen as to Zone 1, and it cannot now complain, or more accurately, cannot complain with any expectation of relief being afforded.

The Opinions 731 and 731–A of the Federal Power Commission herein reviewed are AFFIRMED.