AMERICAN PUBLIC GAS ASSOCIATION et al., Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent,

American Public Power Association, Intervenor.

No. 75-1104.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 1976.

Decided May 19, 1976.

Robert A. Jablon, Albany, N. Y., with whom Charles F. Wheatley, Washington, D. C., was on the brief, for petitioners; also entered an appearance for intervenor.

Thomas M. Walsh, Atty., F. P. C., Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Sol., F. P. C., Washington, D. C., were on the brief, for respondent.

Before WRIGHT and ROBB, Circuit Judges, and BRODERICK,* District Judge.

Opinion for the court filed by District Judge BRODERICK.

BRODERICK, District Judge:

On October 10, 1974, the Federal Power Commission (Commission) raised from 7% to 9% the rate of interest to be paid on refunds ordered by the Commission in connection with any rates and charges which it found not justified. The Commission's Order limits the 9% rate of interest to refunds ordered by the Commission in cases where the rate filings were made on or after Octo-

* Of the United States District Court for the Eastern District of Pennsylvania, sitting by designation pursuant to 28 U.S.C. § 292(d) (1970).

ber 10, 1974, the date of the Commission's Order. Petitioners, the American Public Gas Association, the Indiana Municipal Electric Association, the Ohio Municipal Electric Association, the Indiana Statewide Rural Cooperative, Inc., and the Vermont Electric Cooperative,[1] contend that the Commission's Order is unreasonable and discriminatory in that it retains the 7% rate of interest for refunds ordered by the Commission after October 10, 1974, in cases where the company filed for a rate increase prior to October 10, 1974.

## I.

Under § 205(d) of the Federal Power Act[2] and § 4(d) of the Natural Gas Act,[3] new rate schedules are effective thirty days after notice is given by the producing companies. These Acts empower the Commission to suspend proposed rate increases for not longer than five months, at which time they become effective subject to a refund being ordered in the event the Commission determines the increase unjust and unreasonable. The Commission is authorized to order companies to make such refunds to the extent that the increased rates are determined not to be "just and reasonable." The Commission is further empowered to order the companies to pay interest on such refunds.[4] Several years sometimes elapse before a final ruling is obtained and the refund paid.

The Commission determined the refund interest rate on a case-by-case basis until 1959, at which time the refund interest rate for independent natural gas producers was set at 6%.[5] It was raised to 7% one year

later.[6] In 1971 the refund interest rate under both the Federal Power Act and the Natural Gas Act was set at 7%.[7] The Commission at that time declined to adopt a proposal that the refund interest rate be calculated by reference to the fluctuations in the prime interest rate, concluding that a fixed refund interest rate would eliminate widely varying interest rates between companies or within the same company on different filings, eliminate confusion among parties receiving refunds, and simplify record-keeping.[8] The Commission further noted that the fixed interest rate could "readily be adjusted as financial conditions warrant to avoid imposing harsh penalties or enrichment to those placing rates in effect subject to refund."[9]

On April 23, 1974, in Docket No. RM74–18, the Commission issued a notice of proposed rulemaking. The notice stated that it was considering a change in the refund interest rate because of substantial changes in economic conditions.[10] No specific refund interest rate or method of calculation was proposed by the Commission, but all interested persons were invited to submit data, views and comments. In response, comments were filed by fifty-one parties.

Upon the basis of the record in Docket RM74–18, the Commission, on October 10, 1974, issued Order No. 513, which amended its regulations by establishing a 9% refund interest rate on all refunds where the rate filing took place on or after October 10, 1974. Petitions for rehearing attacked the selection of the 9% refund interest rate, as well as the Commission's failure to apply the 9% refund interest rate retroactively.[11]

---

1. American Public Power Association is an intervenor.

2. 16 U.S.C. § 824d(d).

3. 15 U.S.C. § 717c(d).

4. 16 U.S.C. § 824d(e); 15 U.S.C. § 717c(e).

5. Order No. 215, 22 F.P.C. 668 (1959).

6. Order No. 215A, 23 F.P.C. 474 (1960).

7. Order No. 442, 46 F.P.C. 1287 (1971).

8. Id., 46 F.P.C. at 1288.

9. Id.

10. Notice of Proposed Rulemaking Related to the Interest Rate on Amounts Held Subject to Refund (April 23, 1974).

11. In the Application for Rehearing (November 11, 1974), the petitioners argued that:

Order No. 513 applies to filing made on or after October 10, 1974, the issuance date of the Order. [Failing] to include filings pending before the Commission is arbitrary and without justification. Its effect is that refunds arising from earlier filings will be sub-

In Order 513A, the Commission rejected both of these arguments and declined to change Order 513.[12]

This appeal does not contest the Commission's establishment of the 9% refund interest rate, but does contend that the Order is unreasonable and discriminatory in that it limits the 9% refund interest rate to cases where the company's rate filing took place on or after October 10, 1974, and thus retains the 7% refund interest rate in cases where the company filed for a rate increase prior to October 10, 1974. Petitioners request that Orders No. 513 and No. 513A be remanded to the Commission with instructions "to make the nine percent rate of interest effective for all refunds ordered by the Commission after October 10, 1974." (Brief of petitioners at 23).

## II.

■ Section 19(b) of the Natural Gas Act [13] provides that any party aggrieved by an order of the Commission may obtain a review of such order in the United States Court of Appeals. Although at one time the restrictive pronouncements of *United Gas Pipe Line Co. v. F. P. C.,* 86 U.S.App. D.C. 314, 181 F.2d 796, *cert. denied,* 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950), barred review of a decision which was not "based on evidence presented in a quasi-judicial proceeding before the Commission" (footnote omitted), *id.* at 798, the *United Gas* doctrine has given way to a more expansive interpretation of orders reviewable pursuant to § 19(b). Recent cases have emphasized that the "determining factor" in connection with the reviewability of Commission orders is not the distinction between

rulemaking and adjudication, but rather whether the record is sufficient to allow meaningful review. *Pacific Gas & Electric Co. v. Federal Power Com'n,* 164 U.S.App. D.C. 371, 506 F.2d 33, 47–48 (1974); *Chicago v. F. P. C.,* 147 U.S.App.D.C. 312, 458 F.2d 731, 740–41 (1971), *cert. denied,* 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972).

■ We find that the record in this case is sufficient to enable this Court to meaningfully review those portions of the Commission's Order challenged in this appeal. This appeal does therefore satisfy the criteria for reviewability set forth in *Pacific Gas & Electric, supra,* in that the record is sufficient for meaningful review, and the Order does have an immediate and significant impact upon petitioners. It is well settled, however, that on a petition to review orders of the Commission under the Natural Gas Act and the Federal Power Act, the scope of review by the Court of Appeals is limited. *Mobil Oil Corporation v. Federal Power Commission,* 152 U.S.App. D.C. 119, 469 F.2d 130, 141–42 (1972), *cert. denied,* 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 159 (1973); *Ashland Oil and Refining Co. v. Federal Power Comm.,* 421 F.2d 17, 22 (6th Cir. 1970). We must accord deference to the Commission since it is a specialized agency created by Congress to deal with complex problems. *California Gas Producers Ass'n v. F. P. C.,* 383 F.2d 645 (9th Cir. 1967). As stated by the Supreme Court in *Permian Basin Area Rate Cases,* 390 U.S. 747, 790, 88 S.Ct. 1344, 1372, 20 L.Ed.2d 312 (1968):

the breadth and complexity of the Commission's responsibilities demand that it be given every reasonable opportunity to

---

ject to a 7%, not a 9% interest rate. There is no basis which supports denying earlier filings at least a 9% interest rate. (Application for Rehearing at 8).

12. Order No. 513A, Order Denying Applications for Rehearing and Clarifying Prior Order (December 11, 1974).

13. 15 U.S.C. § 717r(b) provides in part:

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a

review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

formulate methods of regulation appropriate for the solution of its intensely practical difficulties.

■ It is the settled law that in reviewing rules of general application, the Court is limited to the determination as to whether the rule is unreasonable, arbitrary, capricious, or discriminatory. *See Chicago v. F. P. C., supra,* 458 F.2d at 741–42; *Ashland Oil, supra,* 421 F.2d at 23; *Superior Oil Company v. Federal Power Commission,* 322 F.2d 601, 618–19 (9th Cir. 1963), *cert. denied,* 377 U.S. 922, 84 S.Ct. 1219, 12 L.Ed.2d 215 (1964). In making such a finding, however, the Court should inquire into the factual predicate for the rule, i. e., the existence or non-existence of the condition advanced as the basis for the rule. *See Chicago v. F. P. C., supra.*

### III.

■ Order 513 was promulgated in accordance with the requirements for rule-making set forth in the Administrative Procedure Act [14] and is not challenged on procedural grounds. Furthermore, there is no question that the Natural Gas Act and Federal Power Act specifically grant the Commission authority to order interest on refunds [15] and promulgate a general rule determining the interest rate applicable to refunds.[16] No one questions, and indeed this Court may take judicial notice of, the fact that at the time Order 513 was promulgated the money market was such as to call for an increase in the refund interest rate. We have only to decide, therefore, whether Order 513 is unreasonable, arbitrary, capricious or discriminatory insofar as it limits

the 9% refund interest rate to company rate filings which took place on or after October 10, 1974, and retains the 7% refund interest rate in connection with company rate filings made before October 10, 1974.

Refunds may be ordered by the Commission whenever it determines that the increased rates being collected are not "just and reasonable." The purpose of the Federal Power Act and the Natural Gas Act is to assure just and reasonable rates for consumers. *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 610, 612, 64 S.Ct. 281, 88 L.Ed. 333 (1944).

In this case the Commission determined that the 7% rate of interest on refunds was too low and should be increased to 9%. In Order 513 it ruled that: "[W]e believe it is in the public interest to establish 9% as the interest rate on amounts held subject to refund," and amended 18 C.F.R. § 154.-102(c) (1974) to read, in part:

> . . . [T]he independent producer shall . . . refund . . . the portion of any increased rate found by the Commission . . . not justified, together with interest thereon at the rate of seven percent per annum for all rate filings tendered prior to October 10, 1974, and nine percent per annum for all rate filings tendered on or after October 10, 1974, from the date of payment . . . until refunded. . . .[17]

By making the 9% rate applicable only to filings made on or after October 10, 1974, the date of its Order, the Commission retained the refund interest rate of 7% for refunds ordered after October 10, 1974, where the company had filed for an in-

---

**14.** 5 U.S.C. § 551 *et seq.*

**15.** 15 U.S.C. § 717c(e); 16 U.S.C. § 824d(e).

**16.** 15 U.S.C. § 717o; 16 U.S.C. § 825h.

**17.** 18 C.F.R. § 154.67(c) (1974) was amended to read:
> The pipeline company shall refund . . . the portion of any increased rates and charges found by the Commission . . . to be not justified, together with interest at the rate of seven percent per annum for all rate filings tendered prior to October 10,

1974, and nine percent per annum for all rate filings tendered on or after October 10, 1974.
18 C.F.R. § 35.19a (1974) was amended to read:
> [T]he public utility . . . shall refund . . . the portion of the increased rates or charges found by the Commission . . . not justified, together with interest at the rate of seven percent per annum for all rate filings tendered prior to October 10, 1974, and nine percent per annum for all rate filings tendered on or after October 10, 1974.

creased rate prior to October 10, 1974. We find that the Commission's Order is unreasonable and discriminatory insofar as it deprives those to whom refunds are ordered on or after October 10, 1974, of the 9% interest rate on excess amounts collected after that date and deprives them of the 9% interest rate for the period after October 10, 1974, on the excess charges which were collected prior to that date.

Petitioners contend that the 9% refund interest rate should be retroactive. In other words, it is petitioners' position that the 9% refund interest rate should apply to all refunds ordered by the Commission after October 10, 1974, regardless of the date on which the company filed for the increased rate. We reject this contention. It was not unreasonable for the Commission to refrain from imposing a 9% refund interest rate on any excess charge which was collected prior to October 10, 1974, for any period prior to that date. Not until October 10, 1974, did the Commission determine that the fair and reasonable refund rate of interest should be 9%. Prior to October 10, 1974, the Commission had fixed the fair and reasonable refund rate at 7%.

As stated by this Court, "The Commission acted sensibly and reasonably in making its new policy effective as of the date it was announced to the industry." *City of Chicago v. Federal Power Commission,* 147 U.S. App.D.C. 312, 385 F.2d 629, 641–42 (1967), *cert. denied,* 390 U.S. 945, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1968). "What is required by the Rule of Law is that agency policies and standards, whether or not modifications of previous policies, be reasonable and non-discriminatory. . . ." *Id.* at 637.

However, we find unreasonable and discriminatory Order 513 insofar as it provided that the 7% refund interest rate should be paid on all refunds ordered after October 10, 1974, where the company filed for its rate increase prior to that date. Since the Commission found on October 10, 1974, that 9% was a fair and reasonable rate of interest for refunds, there is neither rhyme nor

reason to an Order which deprives those to whom refunds are ordered after October 10, 1974, of the 9% refund interest rate on excess charges paid by them after October 10, 1974. This portion of Order 513 sanctions a 2% unjust enrichment for companies filing prior to October 10, 1974, that simply bears no reasonable relationship to the statutory purpose. The statute permits the Commission to order refunds with interest in order to make whole the consumers who have been required by the company to pay rates that are not just and reasonable. *See FPC v. Tennessee Gas Co.,* 371 U.S. 145, 154, 83 S.Ct. 211, 9 L.Ed.2d 199 (1962). Companies in this category which happened to file prior to October 10, 1974, will be depriving their consumers of the excess portion of their rates every bit as much as companies that filed on or after October 10th. Putting to one side the excess these consumers paid prior to October 10th, such consumers will not be made whole unless they receive interest on the excess charges paid after October 10th at the same rate as the consumers of companies which filed on or after that date. Filing date is a fortuity with no rational relationship to the compensatory purposes of the statute. We also find Order 513 to be unreasonable and discriminatory insofar as it deprives those to whom refunds are ordered after October 10, 1974, of the 9% refund interest rate for the period after October 10, 1974, on the excess charges which were collected prior to that date. The Commission's contention that companies should be able to rely upon the interest rate in effect when the filing is made falls of its own weight when carried past the date when the Commission announced its finding that 9% was a fair rate of return on refunds. Furthermore, the Commission's Order establishing the 7% rate specifically stated that the 7% rate would be adjusted "to avoid imposing harsh penalties or enrichment to those placing rates in effect subject to refund." [18]

The Commission contends that it should not be required to make Order 513 retroac-

**18.** 46 F.P.C. at 1288.

tive and discusses several cases concerning the retroactive application of agency orders. In our opinion the doctrine of retroactivity has no bearing on the issue before this Court. Our determination that Order 513 is unreasonable is based on the fact that it discriminates prospectively not only as to customers from whom excess rates and charges were collected on and after October 10, 1974, but also discriminates as to customers from whom excess rates and charges were collected prior to October 10, 1974, in that it deprives them of the 9% refund interest rate on such excess charges for the period after that date. The date selected by the company to file for increased rates or charges should not be a controlling factor in determining the rate of refund interest.

We find that Order 513 is unreasonable in that it discriminates not only against customers from whom excess rates and charges were collected on and after October 10, 1974, but also denies the 9% refund interest rate on such excess charges for the period after that date to customers from whom excess rates and charges were collected prior to October 10, 1974. We therefore remand to the Commission with instructions to amend Order 513 consistent with this Opinion.

*Judgment accordingly.*