CHICAGO STADIUM CORPORATION, a Delaware Corporation, and Chicago Blackhawk Hockey Team, Inc., an Illinois Corporation, Appellees,

v.

Thomas K. SCALLEN and Medical Investment Corporation, a Minnesota Corporation, Appellants.

Nos. 75–1825,* 75–1857.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 20, 1975.

Decided Feb. 10, 1976.

* Case No. 75–1825 was considered on application for order granting preliminary injunction and is an original proceeding in this Court.

Stephen C. Davis and Steven Z. Lange, Minneapolis, Minn., for appellants.

Lawrence J. Hayes, Albert A. Woodward, Philip A. Pfaffly, St. Paul, Minn., for appellees.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Chicago Stadium Corporation and the Chicago Blackhawk Hockey Team, Inc. brought this action for a preliminary injunction against Thomas K. Scallen, president of Medical Investment Corporation (Medicor), several directors of Medicor, and Medicor to enjoin the issuance of 623,719 shares of stock to Thomas K. Scallen, or if issued, to enjoin Scallen from voting those shares at a shareholders' meeting scheduled for November 1, 1975. The district judge (Judge Edward J. Devitt) initially denied the application for a temporary injunction (October 15, 1975) but thereafter, following extensive discovery upon an expedited basis, issued a preliminary injunction dated October 29, 1975, enjoining defendants from the following: (1) issuing or causing to be

issued to Scallen the 623,719 shares of Medicor purportedly authorized to be issued to him by the Medicor board; (2) voting the 623,719 shares at the shareholders' meeting. The court's injunction also prohibited defendants from cancelling, delaying, or interfering with the scheduled meeting of shareholders. The defendants then sought a stay of the district court's order from this court. We denied the stay but ordered the appeal expedited (No. 75–1825, 8th Cir., Oct. 31, 1975). Defendants now bring this appeal on the merits from the order granting a preliminary injunction. We affirm the district court.

The facts of this case are essentially undisputed. Prior to October 17, 1975, there were 1,151,816 shares of common stock of Medicor outstanding. Plaintiffs-Chicago Stadium Corporation and Chicago Blackhawk Hockey Team, Inc. owned a total of 600,000 shares or 52 percent of the stock. Defendant-Thomas Scallen, president of Medicor, owned 179,355 or 16 percent, and the remaining shares, 372,461 or 32 percent, were publicly held.

In 1974 and early 1975, the chairman of the board of plaintiffs, Mr. Arthur M. Wirtz, became disenchanted with Mr. Scallen's operation of Medicor and at some point during mid-1975 apparently decided to remove Mr. Scallen from the presidency. Although plaintiffs were majority shareholders, Mr. Scallen had effective control of the Medicor board of directors so it was necessary for plaintiffs to wait until a shareholders' meeting was called. After considerable pressure from the plaintiffs, on October 10, 1975, Medicor mailed a notice to shareholders calling a special meeting of shareholders for November 1, 1975, for the election of directors.

Prior to that shareholders' meeting, however, the board of directors met on October 17, 1975, and authorized the issuance of 623,719 shares of voting common stock to Scallen in exchange for the cancellation and extinguishment of an alleged $311,859 debt owed by Medicor to Scallen. The minutes of that meeting, however, strongly suggest that the real reason for the purported issuance of stock was to enable Mr. Scallen to effectively control the upcoming shareholders' meeting. After the purported issuance of these shares, Scallen owned 46 percent of the outstanding shares and the plaintiffs 34 percent. The remaining 20 percent were held publicly and the district court found that the issuance of the new shares to Scallen, if valid, effectively transferred voting control of Medicor from plaintiffs to Scallen.

On October 29, 1975, after a hearing, Judge Devitt granted the preliminary injunction described above. Appellants then brought this appeal and other proceedings noted above to this court.

■ The grant of a preliminary injunction rests with the district court and the merits are reviewed on appeal only as they bear on whether the trial court improvidently exercised its discretion. *E. W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1113 (8th Cir. 1969); *Baggett Transportation Co. v. Hughes Transportation, Inc.*, 393 F.2d 710, 714 (8th Cir. 1968); 11 C. Wright & A. Miller, *Federal Practice and Procedure*, §§ 2948, 2962; *see Brown v. Chote*, 411 U.S. 452, 457, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973); *American Home Investment Co. v. Bedel*, 525 F.2d 1022 (8th Cir. 1975); *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973).

■ The two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are (1) the probability that plaintiff will succeed on the merits and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted.[1] *Minnesota Bearing Co. v. White Motor Corp., supra*, 470 F.2d at

---

1. Other factors which may be considered are the effect on other interested parties and the public interest. *See American Home Investment Co. v. Bedel, supra.*

1326; *see Brown v. Chote, supra,* 411 F.2d at 456.[2]

The district court addressed these considerations and found that there was a strong likelihood that plaintiffs would ultimately prevail on the merits and would suffer substantial injury if the injunction were not granted. There is considerable evidence in the record to support these findings.

It is basic, of course, that directors or officers who cause unissued or treasury shares to be issued to themselves or others solely for the purpose of obtaining or maintaining control of the corporation breach their fiduciary duty to the shareholders. 19 C.J.S. Corporations § 795.

Although defendants claim that issuance of the shares was a bona fide business transaction extinguishing a debt allegedly owed Scallen by the corporation,[3] the district court considered evidence which severely undermined that contention. The alleged indebtedness had been outstanding for several years. Significant, too, is the fact that a majority of the board voted to issue the shares despite the opinion of counsel indicating substantial doubt as to the validity of such action. Evidence indicated that the board had substantially undervalued the shares issued in satisfaction of Scallen's debt. Moreover, the amount of Scallen's claim against the corporation was in dispute.[4] Judge Devitt determined upon sufficient evidence that the issuance of the shares was of doubtful legality and that the consideration for the shares was of doubtful adequacy. Accordingly, the district court properly determined that plaintiffs would likely prevail on the merits.

Appellants' principal contention on this appeal is that the plaintiff's proof of irreparable harm was insufficient to justify injunctive relief. In making this argument, appellant contends that the status quo which ought to be preserved pending a final adjudication on the merits should leave the parties where they were as of October 29, 1975, the date on which the district court issued its injunction. Appellees, to the contrary, claim that the status quo is that state of affairs existing at the commencement of the litigation at which time appellees held a majority of the stock of Medicor which entitled them to a majority vote at the November first meeting of shareholders.

In granting the preliminary injunction, Judge Devitt rejected appellants' contention that the proof failed to show that plaintiffs-appellees would be irreparably harmed. In a memorandum supplementing his bench ruling the trial court stated:

> While it is not certain that plaintiffs will prevail at trial, it is likely they will, principally because of the very doubtful validity of the 623,719 shares

---

2. Similar considerations are present upon considering whether to stay an injunction pending an appeal. The party seeking the stay must meet these standards:

   (1) a strong showing that he is likely to succeed on the merits of the appeal; (2) a showing that, unless a stay is granted, he will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties; and (4) a showing that a stay will do no harm to the public interest. [*Reserve Mining Co. v. United States,* 498 F.2d 1073, 1076–77 (8th Cir. 1974).]

3. In their brief, however, appellants essentially concede that the reason for the stock issuance was to allow Mr. Scallen to retain his position as president.

   The practical effect of the October 17 Board action was to dilute the 52% voting control of the plaintiffs to approximately 35% and to increase President Scallen's personal holdings to approximately 46%. The Board felt that it was in the best interests of all stockholders to perpetuate Mr. Scallen's involvement with the ice show business of the defendant corporation and anticipated that plaintiffs would terminate Mr. Scallen. The Board felt that a change of top management would not be in the best interests of the corporation at such a critical point in its business cycle. [Appellant's Br. at 4.]

4. This alleged indebtedness included notes payable to Mr. Scallen and accrued salary. Plaintiffs contest the validity of this debt, and in particular, a claim for accrued salary while Mr. Scallen was away from the United States for a substantial period of time.

issued to Thomas K. Scallen at the quickly-summoned Board of Directors' meeting controlled by Scallen and apparently called to issue the shares in contemplation of the assertion by plaintiffs at the stockholders' meeting of their right to exercise the prerogatives of management through their 52% ownership of Medical Investment Corporation.

The trial court also made these pertinent findings:

17. That plaintiffs have established a substantial need for a preliminary injunction, particularly in light of the meeting of shareholders scheduled for November 1, 1975, for the reasons that if Thomas K. Scallen is allowed to vote the 623,719 shares as to which substantial questions of validity are raised, plaintiffs will be deprived of their voting control of Medical Investment Corporation which would not be the case had the annual meeting been held timely or if 623,719 shares of stock had not been issued to Thomas K. Scallen on October 17, 1975.

18. That the right to elect management is a substantial property right inhering in plaintiffs' ownership of stock.

19. That the relative position of plaintiffs and defendant Thomas K. Scallen during the pendency of this litigation are best preserved by maintaining such parties in the position they would have been in but for the aforesaid issuance of shares to Thomas K. Scallen.

20. That, on balance, and in view of the likelihood that plaintiffs will prevail on the merits, greater harm would be suffered by plaintiffs than by defendants if defendant Thomas K. Scallen is permitted to vote the 623,-719 shares issued to him on October 17, 1975 at any meeting of the shareholders held prior to the conclusion of this litigation and defendants can be protected from monetary loss by an appropriate bond.

 In balancing the equities between the parties, Judge Devitt was required to consider the merits of the plaintiffs' claim. Since plaintiffs likely will prevail on the merits, it follows that Scallen's title to the newly-issued stock was tainted by his breach of a fiduciary relationship to the company shareholders. Accordingly, on this record the court was entitled to place the parties in the position that they occupied immediately preceding Scallen's presumptively illegal issuance of stock to himself and to permit the parties to exercise shareholder voting rights as of a date immediately preceding the questioned stock issuance.[5]

The record completely supports the district court's analysis and ruling. Accordingly, we affirm.

---

**5.** The trial court conditioned the issuance of the injunction upon plaintiff filing a $100,000 bond, which it deemed adequate to cover any damages sustained by Scallen should the injunction ultimately fall.