November 30, 1976.

M. P. No. 76-252. NARRAGANSETT ELECTRIC COMPANY *v.* WILLIAM W. HARSCH *et al.* This order supplements earlier orders entered in this controversy whereby on October 1, 1976, a majority of this court denied the Narragansett Electric Company's (Narragansett) motion to suspend an order of the Public Utilities Commission (PUC) that in turn had suspended the effective date of a proposed rate increase sought by the utility. Narragansett's motion to suspend accompanied an amended petition for certiorari, which was filed with this court on September 3, 1976.

Earlier, in *Rhode Island Consumers' Council* v. *Smith,* 113 R.I. 384, 322 A.2d 17 (1974), we alluded to Narragansett's family tree. There we observed that Narragansett's common stock is owned by a holding company, the New England Electric System (NEES), and NEES also owns the New England Power Company (NEPCO). It is also conceded that NEES, through its other holdings, owns several electric companies which service retail customers in many of the New England states.

An examination of Narragansett's petitions, its various motions, and supporting documents reveals that on November 28,

1975, NEPCO filed an application with the Federal Power Commission (FPC) seeking to increase the cost of the power NEPCO sells to Narragansett and other subsidiaries because of the increased purchase cost of fuel. Two days later, December 1, Narragansett filed with the PUC a schedule of proposed rate increases, which reflected the increased rates that NEPCO would charge Narragansett once NEPCO's proposal was approved by the FPC. Narragansett sought to have its so-called Purchase Power Cost Adjustment (PPCA) become effective on January 1, 1976, or whenever the FPC approved the rate sought by NEPCO. The PUC, acting pursuant to G.L. 1956 (1969 Reenactment) §39-3-13, stayed the effective date of Narragansett's proposal for a period of 6 months from and after the effective date of any approval that the FPC might give to NEPCO's request.

On December 31, 1975, the FPC issued an order which authorized NEPCO to charge an increased rate pending the federal agency's consideration of its application. The effective date of the order was suspended for a period of 2 months. In its order the FPC made it clear that there had been no showing that the proposed increases were "just and reasonable" and called for a refund in the event that NEPCO's proposal was rejected or modified. On March 1 NEPCO started charging Narragansett the increased rates. On March 23 the PUC held a hearing, at which time Narragansett presented testimony and various exhibits. Other hearings have been held since that time, and the PUC has further stayed the effective date of Narragansett's proposed increases. One of the parties who has appeared before the PUC and vigorously contested Narragansett's claim has been the Rhode Island Consumers' Council, a legal entity created by the Legislature for the express purpose of representing the public interest in all proceedings which seek an "* * * increase of rates or costs of services or commodities where regulated by law of the general assembly." General Laws 1956 (1969 Reenactment) §42-42-5.

On June 29 Narragansett filed with us its original petition for certiorari and its initial motion to suspend the PUC's suspension order. We heard oral arguments on the motion, and an order denying it was entered on July 14. The hearings resumed before the PUC, and on August 31 it entered a second order further suspending the effective date for Narragansett's proposed rate increase until December 1. On September 3 Narragansett filed its amended petition for certiorari and a second motion asking us to stay the PUC's August 31 stay order. Again we convened specially to hear oral arguments, and a majority of the court voted to deny the stay. This supplemental order explicates the rationale for the denial.

Before proceeding further, it should be pointed out that §39-5-4 specifically authorizies this court to stay the operative effect of "any judgment or order" entered by the PUC. Similarly, our Rule 8 enables a litigant to obtain a stay in this court of a trial court's judgment pending appeal. Our Rule 8 is patterned after Federal Appellate Rule 8. In looking for the criteria to be followed in determining whether we should stay an order of the PUC, we think it appropriate that we follow the criteria that guide the federal appellate judiciary when it considers a stay under its Rule 8.

A stay will not be issued at the federal appellate level unless the party seeking the stay makes a "strong showing" that (1) it will prevail on the merits of its appeal; (2) it will suffer irreparable harm if the stay is not granted; (3) no substantial harm will come to other interested parties; and (4) a stay will not harm the public interest. *Morgan* v. *Kerrigan,* 523 F.2d 917 (1st Cir. 1975); *Beverly* v. *United States,* 468 F.2d 732 (5th Cir. 1972); *Chicago Stadium Corp.* v. *Scallen,* 530 F.2d 204 (8th Cir. 1976); *Alpine Lakes Protection Soc.* v. *Schlapfer,* 518 F.2d 1089 (9th Cir. 1975); *Virginia Petroleum Job Ass'n* v. *Federal Power Comm'n,* 259 F.2d 921 (D.C.C.A. 1958). With these standards in mind, we shall turn first to the issues of

the utility's showing of its probable success on appeal and the irreparable harm it has suffered.

Throughout this litigation Narragansett has claimed that since interstate transactions between it and its affiliate fall within the exclusive jurisdiction of the FPC, the PUC cannot inquire as to the reasonableness of the increased rate being charged by NEPCO. In taking this position, the local utility refers us to holdings wherein the Supreme Court has ruled that the transmission of electrical energy from one state to another and its wholesale price are matters that come within the sole power and authority of the federal government. *F.P.C.* v. *Southern California Edison Co.*, 376 U.S. 205, 84 S.Ct. 644, 16 L.Ed.2d 638, (1964); *Public Utilities Comm'n of Rhode Island* v. *Attleboro Steam & Electric Co.*, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549 (1927).

The PUC concedes the federal right to set the wholesale price but points out that the General Assembly has charged it with the responsibility of determining the reasonableness of the retail rate being charged the Rhode Island consumer by Narragansett. The state agency directs our attention to §39-3-30 and the language therein which authorizes the Rhode Island Division of Public Utilities (DPU) to investigate the reasonableness of any contract entered into by two affiliated utilities. If the DPU is not satisfied as to the reasonableness of the contract provisions, §39-3-30 specifically states that the cost of the contract may not be included within the utility's rate base. The PUC claims that it has an obligation on the facts of this controversy to serve as something more than a rubber stamp for the actions taken by the FPC.

Again, if one believes the statistical data presented by Narragansett, the utility's claim of irretrievably lost revenue and a consequent downward slide in its rate of return could well be described as irreparable harm. The Consumers' Council and the PUC, however, look with a somewhat jaundiced eye at

Narragansett's statistical data and the morbid picture its representatives painted at our September hearing. They point to the interrelationship of Narragansett, NEPCO and NEES and describe Narragansett's apparent multimillion dollar loss as being somewhat suspect because it arises from a classic case of "self dealing."

We are not convinced that the *California Edison* and the *Attleboro* cases preclude a state regulatory agency from inquiring as to the reasonableness of the retail rate being charged by an intrastate distributor who receives its power from an out-of-state wholesale supplier. Further, we find some support for the PUC contention that since Narragansett's sales are strictly local, they are subject to state scrutiny. *F.P.C.* v. *Louisiana Power & Light Co.*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *Panhandle Eastern Pipeline Co.* v. *Pub. Serv. Comm'n*, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947).

The question of irreparable harm is inextricably intertwined with the factor of credibility. Narragansett has maintained that it is on the brink of receivership. How much credence can this court give to that claim? As noted before, the Rhode Island Consumers' Council argues that things are not as black, or red, if you will, as the local utility would have one believe. In September, hearings on Narragansett's pass-through request were still on before the PUC, and the Consumers' Council was about to cross-examine Narragansett's experts. We are not fact-finders, and for us at this point to make a determination as to the establishment of irreparable harm would be nothing more than an exercise in sheer speculation.

The harm to the interested people and the public interest criteria dovetail into one another. Today no one can determine with any degree of certainty what amount, if any, of Narragansett's increased power costs will ultimately be absorbed by the Rhode Island consumer. The refund mechanism suggested by Narragansett, in our opinion, is not a satisfactory solution

because, for one thing, there are two refunds in question — the FPC's and the state's. When the FPC will actually decide the merits of NEPCO's rate request is a task for a soothsayer. We mean no disrespect whatever to the FPC, but its track record in the area of decision making gives rise to the reasonable inference that a speedy disposition of NEPCO's application is unlikely. Furthermore, what happens if the PUC should grant a portion of the pass through and subsequently the FPC orders a refund? It is reasonable to assume that by the time the ultimate decisions are made on the federal and state levels, many of the intrastate consumers will have deceased or moved elsewhere. Consequently, we believe that a stay is not in the public interest.

Thus it is that the undersigned have voted to deny Narragansett's second request for a stay.

BY ORDER,

WALTER J. KANE, *Clerk*

ENTER: November 30, 1976

JOSEPH A. BEVILACQUA, C. J.
THOMAS F. KELLEHER, J.
JOHN F. DORIS, J.

Mr. Justice Paolino, dissenting. I would have granted the requested suspension of Order No. 9214 and allowed the company to pass through to its retail customers the increased purchased power expense subject to refund. *See* G.L. 1956 (1969 Reenactment) §39-5-4. I adopt this view for the simple reason that, while the permanence of the charges for wholesale power being levied by NEPCO with the FPC's permission is still somewhat in doubt, the fact that the company has incurred additional expenses in excess of $3.8 million from March 1, 1976 to July 31, 1976, is undisputed. That figure has undoubtedly increased considerably in the past 2 months.

This court held in *New England Tel. & Tel. Co.* v. *Public Util. Comm'n,* 116 R.I. 356, 358 A.2d 1 (1976), that deficiencies in a utility company's earnings resulting from regulatory lag are forever lost to the company because only in other very limited circumstances will retroactive collection of rates be permitted. Thus, in a situation like the one now before us, very large expenses actually incurred during the pendency of a rate case amount to so much water under the bridge. Unless this court issues a suspension of the commission's own suspension order, those expenses can never be recovered from the company's retail customers.

In my view, the currently approved rate, having concededly become confiscatory since the implementation of the higher purchased power expense experienced in recent months, should be amended, at least temporarily and subject to refund, so that the company will not undergo a continued steady drain on its capital reserves.

Finally, it is my opinion that, even in the event that the FPC order that precipitated this crisis is rescinded, the public interest would be adequately protected if the company were to file a bond running to the commission conditioned that the company shall repay to its customers all collected sums in excess of the ultimately approved rate.

Mr. Justice Joslin, dissenting. I agree with my Brother Paolino's dissent and supplement it with the following. The majority look to Federal Appellate Rule 8 upon which our own Rule 8 is patterned for the criteria to be followed in determining whether, pending review, we should stay a PUC judgment or order.[1] In my opinion they look to the wrong place, and should instead have been guided by G.L. 1956 (1969 Reenactment) §39-5-4, as enacted by P.L. 1969, ch. 240, §8. That legislation provides that a PUC order or judgment is not auto-

---

[1] None of the cases cited by the majority in support of this principle is a rate case.

matically stayed upon a transfer of the case to this court for review, but that it may be stayed "with or without terms or conditions *as justice and equity require* * * *." (Emphasis added.)

Under that standard "justice and equity" will be served, rather than disserved, if Narragansett is allowed to pass through to its customers, subject to refund, the approximately $750,000 more per month which under an FPC order it is currently paying for purchased power. To arrive at that conclusion does not require "an exercise in sheer speculation"; and indeed in my judgment to conclude otherwise and to refuse to recognize the negative impact on Narragansett's earning capacity of so substantial an increase in its operating expenses is to ignore reality. In support I need not refer to Narragansett's evidence of the potentially catastrophic effect of the PUC's action on its ability to earn the rate of return heretofore allowed.[2] Instead, I rely upon (1) PUC order 407 establishing a formula whereby Narragansett, without the PUC's permission and subject to the commission's right to suspend,[3] may increase its prices to reflect FPC approved increases in the wholesale cost of purchased power; and (2) the prepared testimony of the PUC's own expert. That testimony, according to the uncontradicted statement of Narragansett's counsel made during oral argument, is to the effect that because of the increase in purchased power costs, Narragansett is entitled to an annual surcharge of close to $5,300,000 if it is to achieve the rate of return contemplated by the PUC's most recently completed rate case. To deny Narragansett the opportunity to achieve that return is not only unjust and inequitable, but confiscatory. *See generally New England Tel. & Tel. Co.* v. *Department of Pub. Util.* Mass. , 354 N.E.2d 860 (1976). *Edwards & Angell, Edward F. Hindle, Deming E. Sherman,* for petitioner. *Julius*

---

[2]Subsequent to the oral arguments in this court the local press reported that Narragansett had passed its dividend for the first time since 1929.

[3]The right to suspend was exercised in this case.

*C. Michaelson,* Attorney General, *R. Daniel Prentiss,* Special Asst. Attorney General, for respondents. *Roberts & Willey, Ronald C. Markoff,* for Rhode Island Consumers' Council.