376 A.2d 1036 (1977)
NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY
v.
PUBLIC UTILITIES COMMISSION et al.
No. 75-195-M.P.
Supreme Court of Rhode Island.
January 18, 1977.
Orders January 25, 1977 and April 11, 1977.
Tillinghast, Collins & Graham, Peter J. McGinn, Louise Durfee, Mark A. Pfeiffer, Providence, C. Duane Aldrich, Richard W. Blackburn, Boston, Mass., for plaintiff.
Julius C. Michaelson, Atty. Gen., Gregory L. Benik, Sp. Asst. Atty. Gen., Allen P. Rubine, Asst. Atty. Gen., Providence, Roberts & Willey, Inc., Dennis J. Roberts, II, for Rhode Island Consumers' Council.

ORDER
PAOLINO, Justice.
The petitioner filed a motion for a stay of the supplementary report and order No. 9258 of the Rhode Island Public Utilities Commission (the commission) dated December 10, 1976. Petitioner also moved for further consideration of the case following hearings before the commission subsequent to our opinion of May 20, 1976. After consideration of both motions, it is hereby ordered by a majority of the court:
1. The commission's order No. 9258 of December 10, 1976 is hereby stayed and the enforcement thereof is enjoined insofar as it prohibits the petitioner from collecting, in addition to the revenues granted in said supplementary report and order, revenues of $8,984,000, said additional revenues representing those which petitioner would have been awarded had the commission applied its findings on the petitioner's working capital requirements, rate of return in equity, and erosion adjustment to petitioner's most recent experience as presented by it to the commission following our remand. The foregoing is without prejudice to the commission's right, at the hearing before this court, to challenge the figures upon which the amount of $8,984,000 is based.
2. Petitioner is entitled to implement forthwith the schedule of rates and charges filed by it on August 30, 1974, to the extent necessary to permit its collection of revenues in the amount of $8,984,000, in addition to the sums permitted in the aforesaid supplementary report and order.
3. Pursuant to the provisions of G.L. 1956 (1969 Reenactment) § 39-5-4, as amended, petitioner shall post with the commission a bond in the sum of $100,000, or some lesser amount which can be agreed to by the parties in this case, said bond to be in a form satisfactory to and approved by this court or a Justice thereof.
4. Petitioner shall within thirty (30) days of the entry of the order herein file with this court its brief presenting arguments with respect to all issues which it wishes to argue under its motion for further consideration, with proof of service upon opposing counsel. Briefs by the commission and the Rhode Island Consumers' Council shall be filed within 20 days after receipt of petitioner's brief.
Bevilacqua, C. J., and Kelleher, J., are of the opinion that the motions should be denied. Their dissents will be filed later.
KELLEHER, Justice, dissenting.
In giving a brief explanation as to why I could not subscribe to the stay order that was entered in this controversy on January 18, 1977, at the direction of my Brothers Paolino, Joslin, and Doris, I am assuming arguendo that the telephone company satisfied the criteria for a stay which we delineated in Narragansett Electric Co. v. Harsch, R.I., 367 A.2d 195 (1976).
There are three general determinations that must be made in any public utility rate case. The first is the selection of an appropriate test year (usually a 12-month period) by which the utility's income, expenses, rate base, and rate of return may be measured. Second, there must be established the utility's rate base, which is its investment in or fair value of the used and useful property *1037 necessarily devoted to the rendering of the regulated service. Once the rate base has been established, with a proper adjustment being made for the utility's operating expenses and revenues, all that remains is the setting of an allowable rate of return, i. e., the percentage by which the rate base is multiplied in order to determine the revenue needed to pay expenses and to attract investment capital. This short synopsis of what a rate hearing is all about can be found and further explicated in a masterful opinion written by my Brother Joslin in Rhode Island Consumers' Council v. Smith, 111 R.I. 271, 302 A.2d 757 (1973).
Last spring, after hearing the telephone company's appeal, we issued an opinion in which we denied several of the company's contentions but remanded the controversy to the Public Utilities Commission for its reconsideration of four specific areas where its findings were lacking in evidentiary support. Two of the areas related to the rate of return. They were the erosion allowance and the cost of equity. The remaining areas concerned the propriety of the company's purchase of equipment and supplies from Western Electric and the amount of cash working capital that would enable the company to meet current expenses during the time between the rendition of the service and the receipt of the customers' payments.
After our remand, the commission took additional evidence and issued a supplementary order where it (1) revised upward its original finding as to the cost of equity from 11.25 percent to 11.53 percent; (2) found no fault with the prices being charged by Western Electric; (3) reduced the working capital allowance from a period covering 45 days to one covering 19.59 days; and (4) compensated for any erosion in the earnings it had allowed the company by adding $13,290,000 to the rate base which the commission had determined was proper for the test period ending in June 1974. (The commission's original erosion allowance would have caused an increase in earnings of $553,000.)
The commission's supplementary order was dated December 10, 1976, and within a week the telephone company was seeking a stay. The January 18, 1977, order issued by this court stayed the commission's order and enjoined its enforcement insofar as it barred the telephone company " * * * from collecting, in addition to the revenues granted in said supplementary report and order, revenues of $8,984,000, said additional revenues representing those which petitioner would have been awarded had the commission applied its findings on the petitioner's working capital requirements, rate of return in equity, and erosion adjustment to petitioner's most recent experience as presented by it to the commission following our remand."
General Laws 1956 (1969 Reenactment) chap. 5 of title 39 deals with judicial review of the commission's orders or decisions. Section 39-5-1 provides for exclusive review in this court by way of petition for certiorari. Section 39-5-4 states that we can reverse or affirm any order of the commission and remand the cause with such mandate as law and equity may require. This section makes it clear that the transfer of the cause shall not operate as a stay of the commission's order but that this court may suspend the execution of the same, with or without terms, as justice and equity may require. If a utility seeks the suspension of a rate order, it must file a surety bond guaranteeing repayment of all moneys collected in excess of that rate which is finally determined to be just and reasonable.
It is obvious from the language of the statute that the General Assembly contemplated that there would be times when this court might order a stay to maintain the status quo while the commission's actions are under judicial scrutiny. This is especially true where the commission has conducted an initial hearing on an application for a rate increase and has made findings of fact upon all facets of the myriad of variables that go into a determination of what is a just and reasonable rate. Here the commission had made its findings as to the facts and figures for a test year that ended *1038 in June 1974. On remand, the commission was directed to consider four specific areas in which there was a complete absence of supportive evidence. The commission obeyed our mandate and applied its findings in these four areas to a 1974 rate base. The $8 million plus increase in rates alluded to in the January 1977 order comes about because the order implicitly adopts the company's contention that the commission's findings in those four areas should have been "updated" by their incorporation into a rate base which was being used by the company for the year ending March 31, 1976.
My disagreement with the January stay is based upon several basic principles common to all public utility rate cases. On appeal from the commission, this court does not act as a factfinder; that is the commission's job. The reasonableness of a public utility's request for an increase in its rates is based upon conclusions which are reached after a study of the utility's experience during a particular test year. The majority, by its adoption of a 1976 test year, has placed its imprimatur on figures which have not been examined as yet by the commission. In fact, the company at the present time has pending before the commission an application for a further increase in its rates, and the test year which it uses to support that application encompasses a portion of the test year that it employed as it updated the commission's findings. The stay issued here does not maintain the status quo but in actuality gives the utility a rate increase without the necessity of stopping off at the administrative level.
The commission on remand was obliged to reconsider those areas found lacking in evidentiary supportno less, no more. While it is true that the commission should consider the validity of the remanded adjustments in light of post test-year actuality, Rhode Island Consumers' Council v. Smith, 113 R.I. 384, 393, 322 A.2d 17, 22 (1974), this principle does not envision the converting of a remand into a brand new rate proceeding which would include the redetermination of areas specifically upheld in a prior decision. Yet, this is what the majority has apparently sanctioned by its endorsement of the company's request for a stay. In effect, the majority's action brings the "seamless robe" concept to rate application proceedings. That is, whenever the commission makes an error, however, slight, in any area of its initial order, on remand it would not only be obliged to correct that deficiency but to apply that correction to a totally new set of figures representing, in effect, a new rate request. Such a position undermines the traditional notion that changing circumstances in a utility's fiscal picture meriting additional rate relief should be remedied by the filing of a new application with the Public Utilities Commission. The majority's holding, however, may well make remands the rule and new rate filings the exception.
BEVILACQUA, Chief Justice, dissenting.
I cannot agree with the majority's order granting New England Telephone and Telegraph Co. a stay of the Public Utilities Commission's order No. 9258 of December 10, 1976. In the recent case of Narragansett Elec. Co. v. Harsch, R.I., 367 A.2d 195 (1976) (order denying stay), this court adopted the standards used by federal appellate courts to determine whether a stay should be granted:
"A stay will not be issued * * * unless the party seeking the stay makes a `strong showing' that (1) it will prevail on the merits of its appeal; (2) it will suffer irreparable harm if the stay is not granted; (3) no substantial harm will come to other interested parties; and (4) a stay will not harm the public interest." Id. at 197. (Emphasis added).
After reviewing the arguments, I have concluded that the petitioner has not met its burden of proving that a stay should be granted.
In my opinion petitioner has failed to demonstrate that, in the absence of a stay, it would suffer irreparable injury pending our decision on the merits. The company asserts only that a stay is necessary to permit it to obtain additional revenue that would otherwise be lost during the pendency *1039 of this court's review.[1] Such loss of revenue does not establish irreparable injury. As the court in Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958) stated:
"Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or otherwise corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Id. 259 F.2d at 925.
The petitioner has failed to make a sufficiently strong showing to warrant the extraordinary relief accorded by a stay. Adequate relief, should it be justified, is available through the ordinary appellate process.
Nor has petitioner, in my opinion, met its affirmative burden to establish that the stay will not cause substantial harm to the other interested parties. The mere fact that the increase, if unjustified, is subject to later refund for which a bond will be posted does not establish that consumers will not suffer substantial harm. As the Supreme Court observed in Federal Power Comm'n v. Tennessee Gas Transmission Co., 371 U.S. 145, 154-55, 83 S.Ct. 211, 216, 9 L.Ed.2d 199, 206:
"True, the exaction would have been subject to refund, but experience has shown this to be somewhat illusory in view of the trickling down process necessary to be followed, the incidental cost of which is often borne by the consumer, and in view of the transient nature of our society which often prevents refunds from reaching those to whom they are due."
Furthermore, in deciding whether to stay a rate order, this court must pay particular attention to the crucial question of the effect of the stay on the public interest. "In litigation involving the administration of regulatory statutes designed to promote the public interests * * * interests of private litigants must give way to the realization of public purposes." Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, supra, 259 F.2d at 925. This court has said that:
"[T]he ultimate purpose of the legislature in enacting the statute with reference to the manner in which such rates should be fixed or changed from time to time was to secure the orderly promulgation of rates that would be reasonable and just to the company and to the public." New England Tel. & Tel. Co. v. Kennelly, 75 R.I. 422, 431-32, 67 A.2d 705, 710 (1949).
To secure the orderly promulgation of fair rates, the General Assembly has committed the complex factfinding and judgment functions essential to balancing the utility's need for revenue and the consumer's need for a reasonable cost of an essential service to the expertise of an administrative tribunal, the commission. Absent a patently confiscatory situation, which has not been established in this case, the judiciary is not institutionally well-suited to allocate the distribution of economic loss from delay and inflation among the various public interests the regulatory agency is required to protect.
In my opinion, the court can best serve the public interest by preserving to the fullest extent possible the integrity of the process for resolution of rate conflicts set out in the statute. To this end, we remand to insure that the commission, despite its expertise, demonstrates the evidentiary basis of its findings and judgment; to the same end we should refrain if possible from changing the order it has adjudged reasonable after its expert evaluation of the facts before we have heard the merits of the legal challenge. To the extent that the extraordinary remedy of judicial intervention is unavailable, the regulatory agency and its constituents must find solutions to the problems of lengthy delays in ratesetting within the administrative process.

*1040 ORDER
This matter came on to be heard on the motion of Edward F. Burke, in his capacity as Administrator of the Rhode Island Division of Public Utilities and Carriers, and his capacity as Chairman of the Rhode Island Public Utilities Commission, and John J. Wrenn, and Edward F. Burman, in their capacities as Commissioners of the Rhode Island Public Utilities Commission, requesting that this Court stay its order of January 18, 1977 in this matter. The motion also prayed that this Court either issue a socalled clarifying decision or permit a reargument of the issues encompassed in the aforesaid order.
After consideration of the motion, it is hereby ordered:
1. The motion insofar as it requests a stay and a clarification of the order of January 18, 1977, is denied.
2. The prayer for reargument is granted and will be heard on January 31, 1977 at 10:30 a. m.
3. The grant of reargument is without prejudice to the right of the New England Telephone and Telegraph Company to argue the standing of the members of the Public Utilities Commission.

ORDER
After our order[1] in this case was filed on January 18, 1977, granting the company's motion for a stay of the commission's December 10, 1976 order insofar as that order prohibited the company from collecting revenues of $8,984,000 in addition to the revenues allowed in the December 10, 1976 report and order, see New England Tel. & Tel. Co. v. Public Utilities Commission et al. (filed January 18, 1977), the commission filed a motion for a stay of the January 18, 1977 order and a petition to reargue the company's December 17, 1976 motion for a stay.
The company based its December 17, 1976 motion on the ground that in making its December 10, 1976 report and order the commission continued " * * * to defy the directions of this Court as set forth in its May 20, 1976 opinion and other decisions on the Company's general tariff filings in the last several years."
After considering the company's motion and the conflicting and adversary arguments of counsel representing all the parties, a majority of this court granted the company's motion, pending final disposition of the case, and subject to certain conditions specified in the order, because we were persuaded that justice and equity required such action. General Laws 1956 (1969 Reenactment) § 39-5-4, as enacted by P.L. 1969, ch. 240, § 8.
In the instant motion for a stay and petition to reargue the Attorney General, Julius C. Michaelson, has set forth certain reasons on which he bases his contention that justice and equity require a reargument and a reversal of the order entered by the majority of this court. Because of the strenuous arguments made by the Attorney General and in view of the great public interest involved in this case we granted the motion for reargument and assigned the matter for oral arguments on January 31, 1977.
After hearing arguments of counsel on both sides and after considering all of the reasons advanced by the Attorney General in support of the motion for a stay of our January 18, 1977 order, we find no reason for granting the instant motion for a stay. In our judgment the commission has presented no matter which was not fully considered and passed upon in reaching our conclusion set forth in the January 18, 1977 order. There is no merit to the argument that we failed to state our reasons for granting the stay in that order. Without passing on the question whether we are required to state our reasons for granting or denying motions for stays in cases such as this, it is obvious that we were persuaded, at least until further hearing, by the company's claims that the commission had failed to comply with our directions in the May 20, 1976 decision of this court and *1041 that if the commission had complied with the directions of this court in that decision the company would have been awarded additional revenues of $8,984,000.
For the reasons stated the majority of the court is of the opinion that the commission has failed to persuade us that our conclusion should be changed.
During the reargument on January 31, 1977, the Administrator of the Division of Public Utilities suggested that equitable principles would dictate that any rate relief granted the company by this court should be fashioned in light of the serious financial problems of the elderly and those on fixed incomes. To that end, the Administrator urged that those segments of our citizenry be exempt from any interim rate relief allowed the company.
Thereafter, by letter dated February 9, 1977, the Attorney General requested an opportunity to brief the question of this court's authority to grant such relief. By letter dated February 11, 1977, we granted the Attorney General's request and directed him to file a brief, limited to that question. We also granted the company permission to file a reply brief.
We have carefully considered all of the arguments set forth in the briefs filed by the parties. The Attorney General has failed to persuade this court that it has the authority to grant the relief requested and, therefore, the court unanimously concludes that such request must be denied. See Rhode Island Consumers' Council v. Smith, 111 R.I. 271, 302 A.2d 757 (1973).
NOTES
[1] Unlike the petitioner in Narragansett Elec. Co. v. Harsch, RA., 367 A.2d 195 (1976), in which the motion for a stay was denied, petitioner in the instant case does not even claim incipient bankruptcy.
[1] Bevilacqua, C. J. and Kelleher, J. dissented from this order.