**VIRGINIA ELECTRIC AND POWER COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

ElectriCities of North Carolina, Old Dominion Electric Cooperative, North Carolina Electric Membership Corporation, Northern Neck Electric Cooperative, and Roanoke Electric Membership Corporation, Intervenors.

No. 77-2153.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1978.

Decided Aug. 3, 1978.

Arnold H. Quint, Washington, D.C. (Richard D. Gary, Hunton & Williams, Richmond, Va., on brief), for petitioner.

Lynn N. Hargis, Atty., Federal Energy Regulatory Commission (Robert R. Nordhaus, Gen. Counsel, Philip R. Telleen, Atty., Federal Energy Regulatory Commission, Washington, D.C., on brief), for respondent.

James N. Horwood, Washington, D.C. (Daniel Guttman, Spiegel & McDiarmid, Washington, D.C., on brief), for intervenors ElectriCities of North Carolina.

William T. Crisp, Raleigh, N.C. (Crisp, Bolch, Smith, Clifton & David, Raleigh, N.C., Nathan H. Miller, Harrisonburg, Va., Conrad, Litten, Sipe & Miller, Harrisonburg, Va., on brief), for intervenors Electric Cooperative.

Before WINTER, BUTZNER and HALL, Circuit Judges.

PER CURIAM:

Virginia Electric and Power Co. (VEPCO) petitions for review of orders of the Federal Energy Regulatory Commission denying a surcharge proposed by the utility to collect additional fuel expenses from wholesale customers under a superseded fuel adjustment clause.[1] The principal issue is whether the superseded fuel adjustment clause was designed to collect the actual expenses for fuel or to collect an approximation, based on past experience, of current costs. Because substantial evidence supports the commission's determination that VEPCO used the actual fuel costs incurred in previous months as test data for estimating present costs, we affirm.

Between January, 1973, and May, 1976, VEPCO billed municipalities and electric cooperatives in Virginia and North Carolina under a fuel adjustment clause that

provided for collection of fuel costs on a three month basis with a two month lag. In any month collections under the fuel adjustment clause were based on the average costs for the three months ending with the second month preceding the billing month.[2]

In May, 1976, following amendment of the commission's regulations, VEPCO adopted a new clause that

provides for an upward revision in the cost of fuel included in the base rates and for a reduction in lag time in the collection of fuel costs. The current monthly adjustment factor is now based on fuel expenses for the second month preceding the billing month. Two months later an adjustment is made to correct for any differences between the actual fuel costs and the monthly adjustment factor that had been used.[3]

With its adoption of the new formula, VEPCO sought permission to impose on its wholesale customers a surcharge of more than $7 million, to be collected over 24 months. This surcharge was designed to recapture actual fuel costs incurred from January through April, 1976, that would have been billed during May, June, July, and August had the superseded fuel adjustment clause remained in effect. In support of the surcharge, VEPCO argued that its old fuel adjustment formula entitled it to collect actual fuel costs in four increments: a base charge, billed in the month of use, and the differential between the base and actual costs, billed in three parts in the second, third, and fourth months after use. Without the surcharge, VEPCO maintained, it would be unable to collect part of this differential for the months immediately preceding adoption of the new fuel adjustment clause.

In its order denying the surcharge the commission said:

Under its superseded fuel adjustment clause VEPCO collected revenues for the first month that it was effective based on costs incurred prior to the effective date of the clause. The data for the period before this clause became effective constituted the test period data on which the monetary rate was based. Use of prior period costs as a basis for determining the fuel adjustment charge is similar to collecting revenue under a tariff which utilizes rates developed on the basis of costs incurred during a past test period. The fact that these rates do not ultimately match current costs is not a basis for adjusting such rate absent a specific rate provision providing for such adjustment or rate relief under a rate increase application.[4]

In its petition for review, VEPCO alleges that the commission's disapproval of the surcharge is not supported by substantial evidence, is inconsistent with prior rulings, results in an unconstitutional taking of property, and rests on erroneous application of the concept of retroactive ratemaking.

1. Virginia Electric and Power Company, FERC Docket No. ER76–415, Order Denying Proposed Fuel Adjustment Clause Surcharge (June 20, 1977) and Order Denying Rehearing (August 5, 1977).

2. FERC Order of June 20, 1977, at 1.

3. FERC Order of June 20, 1977, at 1.

4. FERC Order of June 20, 1977, at 4.

We find no merit in VEPCO's assignments of error. In its orders the commission adequately responded to VEPCO's position. We need briefly comment only on the claim that the orders are not supported by substantial evidence, for if the commission's factual premise is sound, VEPCO's other arguments are not persuasive.

The record discloses that VEPCO billed adjustments in the first month in which the old clause was in effect and that these adjustments were computed using actual costs incurred before VEPCO was authorized to use a fuel adjustment clause. But under its pre-adjustment clause rate filing VEPCO had already collected all its entitlement during those months. These initial adjustments therefore could not legally have represented charges for past service. The evidence reveals that although no customers were added or dropped during the life of the old fuel clause, the rate filed with the commission was designed to require any new customers to pay an adjustment based on past months starting with their first bill. Conversely, old customers who ceased buying would not have been billed for deferred charges in the months following termination of service. The commission noted, furthermore, that the proposed surcharge itself would operate inequitably, since it would be based on consumption during the surcharge period, which might not precisely match consumption during the period in which VEPCO incurred the costs being recovered.

The commission's analysis of VEPCO's proposal is similar to that of the Supreme Court of North Carolina which, applying state law, denied the utility authorization to impose a surcharge. *State ex rel. Utilities Commission and Virginia Electric and Power Co. v. Edmisten,* 291 N.C. 477, 232 S.E.2d 199 (1977). In a companion case the Supreme Court of North Carolina characterized a fuel adjustment clause substantially similar to VEPCO's as "simply the orthodox use of a test period." *State ex*

*rel. Utilities Commission and Duke Power Co. v. Edmisten,* 291 N.C. 451, 232 S.E.2d 184, 196 (1977). Emphasizing this point, the North Carolina Supreme Court said:

The *Vepco* case makes this even clearer, for Vepco's fuel adjustment clause did not use a single month's experience in computing the fuel clause factor to be applied to kilowatt hours sold thereafter but used a three months' average coal cost per kilowatt hour. Thus, the *Vepco* case makes it clear that the purpose of the Fuel Adjustment Clause was not "recovery" of past excess expenditures for fuel but was to provide a measure of the reasonably anticipated cost of coal used in generating the kwh to which the factor was to be applied. 232 S.E.2d at 197.

This is precisely the position taken by the Federal Energy Regulatory Commission.

We note, moreover, that the commission has taken a uniform approach to a series of applications for surcharges based on changes in fuel adjustment clauses. *See, e. g.,* Opinion Nos. 790 and 790–A, Public Service Co. of New Hampshire, FERC Docket No. ER76–285 (March 21 and May 20, 1977), *petition for review filed,* No. 77–1592 (D.C. Cir.); Appalachian Power Co., FERC Docket Nos. ER77–325, ER77–426 (June 30 and Sept. 14, 1977), *petition for review filed,* Nos. 77–2004, 77–2005 (D.C. Cir.); *Maine Public Service Co.,* FERC Docket No. E–8264 (June 27 and Aug. 25, 1977), *vacated and remanded,* 579 F.2d 659, No. 77–1438 (1st Cir., June 26, 1978).

We find that the commission's orders are amply supported by the evidence and that there is no warrant in law for overturning them.[5]

The commission's orders are affirmed.

---

5. Section 825*l* (b) of 16 U.S.C., which establishes our standard of review, provides in part that "[t]he findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."