**JERSEY CENTRAL POWER & LIGHT COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Allegheny Electric Cooperative, Inc., Intervenor,**

**Boroughs of Madison, Butler, Lavallette, and Seaside Heights, New Jersey, Intervenors.**

No. 78–1185.

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 1978.

Decided Dec. 8, 1978.

As Amended Feb. 8, 1979.

---

James B. Liberman, Leonard W. Belter, Donald K. Dankner, Debevoise & Liberman, Washington, D. C., for petitioner.

Robert R. Nordhaus, Gen. Counsel, Howard E. Shapiro, Sol., Lynn N. Hargis, Atty., Washington, D. C., for respondent, Federal Energy Regulatory Commission.

William C. Wise, Robert Weinberg, Washington, D. C., for intervenor, Allegheny Electric Cooperative, Inc.

William I. Harkaway, Belnap, McCarthy, Spencer, Sweeney & Harkaway, Washington, D. C., for intervenors, Boroughs of Madison, Butler, Lavallette, and Seaside Heights, N. J.

Before ROSENN and WEIS, Circuit Judges and HANNUM, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

██ The fuel adjustment clause is a controversial reaction to some of the problems created by the energy crisis. The interpretation by the Federal Energy Regulatory Commission of an electrical utility's tariff containing such a provision is the subject of this petition for review. We conclude that the Commission committed no error in construing the clause as one calling for current charges rather than for past expenses. Accordingly, since there was no "billing lag," the utility was not entitled to employ a phase-in arrangement in a new tariff to recover "unbilled" expenses.

In response to rapidly escalating fuel costs, Jersey Central Power & Light Company prepared and filed a tariff with the Federal Power Commission[1] incorporating a fuel adjustment clause for charges to be collected from its wholesale customers.[2]

---

* Honorable John B. Hannum, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Pursuant to the Department of Energy Organization Act, Pub.L.No.95–91, 91 Stat. 565, and Executive Order No. 12009, 42 Fed.Reg. 46267, the Federal Energy Regulatory Commission (FERC) became active as an independent commission within the Department of Energy on October 1, 1977, and the Federal Power Commission (FPC) ceased to exist. Under the sav-

ings provision of the Act, § 705(b), proceedings pending before the FPC were continued and under § 402(a)(1) were transferred to the FERC.

2. To protect the utilities from the ever-fluctuating fuel costs and to reduce the number of rate-filing proceedings, the Commission has allowed the companies to incorporate fuel adjustment clauses as a part of the energy charges to customers. This arrangement permits recovery automatically through formulae designed to

The clause became effective on December 2, 1973, and read in pertinent part:

"An energy cost adjustment factor shall be applied to each kilowatt-hour supplied under this tariff. This energy cost adjustment determined . . . in accordance with the formula set forth below, shall be applied to all kilowatt-hours supplied during the billing month."

There followed a formula that included as factors the cost of fuel and sales in current and base periods, taxes, and a component for adjustment of losses to the delivery voltage. In defining current sales and fuel costs, the tariff stated that these "factors are to be determined as the three month totals for the period ending with the second calendar month preceding the billing month."

With some revisions not material here, Jersey Central billed its customers under the new arrangement until July 27, 1976, when the company filed a proposed new schedule of wholesale electric rates, including a three-step increase in the base cost component of the fuel adjustment clause. This phase-in mechanism [3] was designed to recover "unbilled fuel costs" still owed by customers, according to the utility, under the superseded adjustment clause. The contention was that such a device, similar in effect to temporary surcharges, was needed to recoup fuel costs already incurred. Because the original fuel adjustment charge was based on a time period ending two months before the billing date, the company asserted that a billing lag had resulted.

The boroughs of Lavallette, Madison, Butler, and Seaside Heights, and Allegheny Electric Cooperative, Inc., wholesale customers of Jersey Central, intervened and urged rejection of the proposed fuel adjustment clause as an attempt to retroactively recover fuel costs which the original clause had failed to include. Subsequently, the customers sought severance and summary disposition of the phase-in question in light of *Public Service Co. of New Hampshire*, Opinion Nos. 790 and 790–A, FERC Docket ER76–285 (1977), *petition for review filed*, No. 77–1592 (D.C.Cir.), a decision of the Commission holding illegal a utility's proposed surcharge to recover unbilled fuel costs in a comparable situation. The Commission then issued an order summarily rejecting the phase-in aspect of Jersey Central's rate-filing, finding that this arrangement could not be distinguished from an illegal surcharge. After the Commission denied its application for rehearing, Jersey Central filed this petition for review.

The company contends that its prior fuel adjustment clause was designed to permit recovery for the actual monthly excess fuel costs for the period ending two months before the billing date. Thus, it maintains that when it adopted its new clause on September 27, 1976, there occurred a short fall in its collection for the months of June through September. According to the company, unbilled fuel costs incurred in those months, which were due to be collected under the old fuel clause in the months of October to December, 1976, would not be recouped under the new clause without the phase-in procedure.

reflect the difference between the base cost and the current cost of fuel used to produce kilowatt-hours of electricity. *See* 18 C.F.R. § 35.-14.

Under Jersey Central's fuel clauses, actual costs for a three-month period ending two months prior to the billing month are determined on a per kilowatt-hour basis. These costs are indexed against a base cost per kilowatt-hour. The difference is then expressed as a "factor" which increases—or decreases—in cents per kilowatt-hour the charge for each kilowatt-hour sold in a billing month.

3. Jersey Central's phase-in program was an integral part of the adjustment clause, and provided that the base cost in the present fuel

clause would be effective for the first two months after the proposed base rates became effective. In the next (third) month, the base cost in the present clause would be given a two-thirds weighting and the base cost reflecting 1976 fuel costs a one-third weighting. In the fourth month, the base cost in the present clause would be given a one-third weighting and the base cost reflecting 1976 costs a two-thirds weighting. In all subsequent months, the 1976 base cost would be fully effective. It is the gradual raising of this base index number over several months which constitutes the "phase-in" portion of the clause and the subject of this litigation.

The Commission, however, takes the position that the 1973 tariff did no more than establish a formula, based on past experience, i. e., costs incurred during a prior test period, to compute what was in effect an approximation of the excess and still unknown fuel costs for the billable month. It insists that the company did receive the proceeds of the fuel adjustment charge for every month it had been in effect. Under this view, once Jersey Central had collected its adjustment charge for a particular month, the company had assessed all it was entitled to collect, and there were no unbilled fuel costs still owed by the customer. The Commission contends that because the adjustment rate may have been inadequate to some extent in recapturing costs is not justification for a retroactive charge. Its position is that there was no billing lag and therefore no basis for the phase-in procedure.

The legality of the 1976 clause therefore hinges on the one adopted in 1973. Since the dispute centers on the interpretation of the 1973 tariff, the appropriate place to begin is with its wording, bearing in mind the construction should be that reasonably communicated to those governed by it, and any doubt as to the meaning should be resolved against the filing utility. *Cf. United States v. Missouri-Kansas-Texas Railroad*, 194 F.2d 777 (5th Cir. 1952). *See also Great Northern Railway v. Merchants Elevator Co.*, 259 U.S. 285, 290–91, 42 S.Ct. 477, 66 L.Ed. 943 (1922).

The tariff required that an adjustment factor be "applied to all kilowatt-hours supplied during the billing month." This is inconsistent with the company's premise that the charge was to be a pass-on of *actual* past costs incurred. If that were the aim, then the billing should have been computed on the basis of the kilowatt-hours used during the month in which the fuel charges were actually incurred. If, as Jersey Central argues, it was collecting actual fuel costs on a deferred basis, the company would have had to defer collections for several billing periods before recovering costs for the preceding months. Only in this way

could the company avoid inconsistency with the provision that the fuel adjustment factor was to "be applied to each kilowatt-hour supplied under this tariff" and "to all kilowatt-hours supplied during the billing month."

Moreover, the premise underlying the fuel adjustment charge was that the customer should bear the added expense caused by the increased costs of fuel. A customer whose usage fluctuated substantially from month to month, however, would pay more or less than his proportionate share if the usage amount were not the same in the billing month as it had been in the month when the fuel expense was incurred. And, as was argued in the *New Hampshire* case, if the clause authorized the company to recover actual past costs on a deferred basis, then customers newly entering the system would be paying for fuel charges incurred before they received service and customers leaving the system would avoid paying for fuel used for their benefit.

We think it significant that the tariff stated that the adjustment should be determined "in accordance with the formula set forth," an approach inconsistent with the company's argument that an assessment of actual cost was intended. The tariff provided unmistakably that the charge in the billable month was to be computed on the basis of a specific formula. There was no provision for a charge other than the monthly rate computed under the formula and applied to the kilowatt-hours in the billable month. The fact that the formula was based on costs in a preceding period did not change its effect of providing a method to calculate a current charge rather than to exact a precise recovery of past expenses. Such a formula could as well have been based, for example, on some past wholesale price index or similar factor rather than actual cost incurred, and yet be the basis for a "current" charge.

We are not persuaded that the 1973 tariff did anything other than allow the immediate application of a fuel adjustment charge which had some reasonable relationship to

energy cost incurred during a billable month. It was not absolutely accurate, it did not exactly charge each customer with his proportionate share of expense incurred, at least in the beginning, but it did offer a reasonable basis for estimation.[4]

Two cases involving similar fuel adjustment clauses have been reviewed by the Courts of Appeals for the First and the Fourth Circuits. In *Virginia Electric & Power Co. v. Federal Energy Regulatory Commission*, 580 F.2d 710 (4th Cir. 1978), the Fourth Circuit, in agreement with our view, took the position that the fuel adjustment clause did not provide for recovery of past excess fuel costs but represented the orthodox use of a test period to arrive at current costs. The First Circuit took a somewhat different approach in *Maine Public Service Co. v. Federal Power Commission*, 579 F.2d 659 (1st Cir. 1978). There, the court felt that the Commission had taken an unduly narrow view of the "filed rate doctrine"[5] based on the Commission's misreading of *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951). Believing that there was error in the Commission's reliance on *Montana-Dakota* as support for its conclusion that it lacked legal authority to allow a surcharge, the court remanded the *Maine* case for further consideration.

We have carefully reviewed the Commission's opinion in *New Hampshire*, the seminal decision in the fuel adjustment clause cases, and with due respect to the Court of Appeals for the First Circuit, we do not agree that the agency's ruling there rises or falls on its interpretation of *Montana-Dakota*. Rather, the thrust of the *New Hampshire* case is the construction of the tariff itself. Regardless of whether *Montana-Dakota* forecloses the phase-in here, it appears

to us that the Commission is on solid ground in concluding that a reasonable interpretation of the tariff compels the result it reached.

■ There may be sound reasons to question a general indiscriminate reliance upon administrative expertise but we think it proper to extend some deference to the Commission's interpretation of tariffs, a specialized area in which the agency undoubtedly has extensive experience. In any event, the Commission's construction in this case coincides with our own view. *See, e. g., Associated Press v. FCC*, 146 U.S.App. D.C. 361, 366–67, 452 F.2d 1290, 1295–96 (D.C.Cir.1971).

The company argues that questions of fact remain and that it was therefore improper for the Commission to utilize summary disposition in these circumstances. We have examined the company's position on disputed factual issues but conclude that the interpretation of the tariff in this case is a matter of law which would be unaffected by the company's proffered evidence.

We point out that the issue under consideration here goes only to the rejection of the phase-in mechanism of the fuel adjustment clause. That question was severed from the proceeding for consideration of whether the entire clause was just and reasonable. Thus, in no way has the Commission nor have we passed on the question whether the clause interpreted as a current charge based on past data is just and reasonable.

The order of the Commission will be affirmed.

---

**4.** The company concedes that it did bill customers for the fuel service charged in December of 1973 at the time the rate became effective but now contends that was a mistake and it should have waited several months before imposing the extra charge for the actual costs. The language of the tariff is completely consistent with the conduct of Jersey in 1973, and the present contention of the company cannot vary the plain wording of the tariff.

**5.** Under the "filed rate" doctrine, a public utility "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission." *Public Serv. Co. of New Hampshire, supra*, slip op. at 11, *quoting Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912 (1951).