**BOSTON EDISON COMPANY,**
**Petitioner,**

v.

**FEDERAL ENERGY REGULATORY**
**COMMISSION, Respondent.**

**Towns of Norwood et al., Intervenors.**

**Nos. 79–1179, 79–1287.**

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1979.
Decided Dec. 21, 1979.

George F. Bruder, Washington, D.C., with whom Victor H. Kazanjian, and Bruder & Gentile, Washington, D.C., were on brief, for petitioner.

Lynn N. Hargis, Asst. Gen. Counsel, Washington, D.C., with whom Robert R. Nordhaus, Gen. Counsel, and Howard E. Shapiro, Sol., Washington, D.C., were on brief, for respondent.

Robert C. McDiarmid, Washington, D.C., with whom Spiegel & McDiarmid, Washington, D.C., was on brief, for intervenor, Municipal Light Board of Reading.

Charles F. Wheatley, Jr., Washington, D.C., with whom Robert A. O'Neil, and

Wheatley & Wollesen, Washington, D.C., were on brief, for intervenors, Towns of Norwood, Concord and Wellesley.

Before CAMPBELL, Circuit Judge, WY-ZANSKI,\* Senior District Judge, and CLARKE,\*\* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Boston Edison appeals from the Federal Energy Regulatory Commission's orders striking down Edison's temporary fuel adjustment surcharge. The surcharge was designed to recover approximately $2 million in fuel expenses which Edison incurred in generating power for certain of its wholesale customers, intervenors herein, during January and February 1976. These expenses were left unrecovered allegedly as a result of Edison's conversion, in March 1976, from a two month lag billing formula to a current month formula. Under Edison's old fuel adjustment clause, customers' bills were based upon the cost of fossil fuel two months previous to the billing month. Thus, for example, customers' bill for January were based on November fuel cost figures and February bills on December figures. When, in March 1976, Edison switched to a current month system (i. e., basing March bills on March figures) two months of fuel cost increases were allegedly left uncollected. According to Edison, it is entitled to the surcharge in order to recoup the January and February increases which would have been collected in March and April had the old, two month lag formula remained in effect; to deny the surcharge is to effect a gift of nearly $2 million to the intervenors.

Fuel adjustment clauses enable a utility to automatically pass on to its customers augmentations in the cost of fuel without continually having to file for rate increases. *Public Service Co. of New Hampshire v. Federal Energy Regulatory Commission,*

195 U.S.App.D.C. 130, 133, 600 F.2d 944, 947 (D.C.Cir.1979), *petition for cert. filed* 48 U.S.L.W. 3049 (Aug. 1, 1979) (No. 79–169). There are two basic types of fuel adjustment clauses: cost of service and fixed rate. With the first type, the utility recovers its precise actual fuel expenditures, but on a deferred basis. Under the second, reimbursement is only approximated—customers' bills are calculated on the basis of costs incurred during a past test period. If the costs established in the test period differ from those actually experienced, over or under collection may result; however, once the customer pays the amount due as determined by the filed formula no more is owed regardless whether the utility has in fact recovered its actual costs. While the Commission prescribes certain guidelines to which fuel adjustment clauses must conform, 18 C.F.R. § 35.14, it does not dictate which type of clause must be utilized and thus the utility may choose either type.

The Commission rejected Edison's argument that its old clause was of the first type—designed to recover all fuel costs from past months on a deferred basis—and concluded that it instead "used costs from the second preceding month only to calculate the current month's fuel adjustment charge." Quoting from the Administrative Law Judge, the Commission stated

"[T]he intent of the [superseded] fuel adjustment [clause] . . . was not to permit the recovery in March of expenses incurred in January, but to permit the use of January fuel cost data as a measure of March fuel costs . . . . . When in March 1976 Edison switched to a system which did not rely on data from the second preceding month, it was therefore current in its cost recovery."

In reaching this conclusion the Commission looked not only at the wording of the clause[1] but also to its actual operation. The old clause was not designed to achieve

* Of the District of Massachusetts, sitting by designation.

\*\* Of the Eastern District of Virginia, sitting by designation.

1. Edison placed emphasis on the "forward looking" nature of its superseded lag in billing feature. The clause provided:

   "Whenever in any month, the cost of the fossil fuels used for the generation of electric-

dollar for dollar recovery as would a true cost of service tariff nor did it accomplish that result since fuel costs and energy use were not matched under the clause; rather, fuel costs from one month were applied to energy use in the second succeeding month. Thus, in periods of rising energy consumption, under recovery would result while over recovery would occur in seasons when energy use fell.[2] While the clause may have functioned over the long run with satisfactory precision to Edison, this does not detract from the Commission's conclusion that the clause was not designed to actually match revenues with costs in the manner of a cost of service clause. Nor did Edison assess any additional charges on customers who left the system as would be expected had Edison operated with a true deferred billing system.

We think the superseded clause's discrepancies in operation from that of a cost of service tariff—mismatching of fuel costs with energy use and failing to assess additional sums on customers who left the service—considered in light of the wording of the clause support the Commission's decision that once a monthly bill was paid nothing more was owed; the fuel clause was not

of the cost of service variety and did not guarantee recovery of deferred fuel costs. *See Public Service Co. of New Hampshire v. Federal Energy Regulatory Commission, supra,* 195 U.S.App.D.C. 130, 600 F.2d 944, and *Virginia Electric Power Co. v. Federal Energy Regulatory Commission,* 580 F.2d 710 (4th Cir. 1978), rejecting similar claims by utilities that their superseded fuel adjustment clauses had provided for recovery of actual past costs on a deferred billing basis.[3]

In *Maine Public Service Co. v. Federal Energy Regulatory Commission,* 579 F.2d 659 (1st Cir. 1978), this court was presented with a question of the legality of a similar surcharge designed to bridge the gap between prior and later fuel adjustment clauses. The court vacated the Commission's order disallowing the surcharge because it felt the Commission had erroneously viewed itself as being automatically precluded by inapposite judicial authority from approving the surcharge and had not undertaken an indepth analysis of the propriety of the surcharge as a matter of rate-making policy.[4]

The Commission did, in this case, undertake the policy appraisal called for in *Maine*

---

ity is greater or less than 28.00 cents per million btu, an additional charge or deduction will be applied to the kilowatthours which are billed in the second succeeding month." Edison argued that the clause explicitly looked "*forward* from the current billing month to the recovery of that month's fuel cost increases in the future . . . ." (Emphasis in original.)

2. This result assumes escalating fuel prices which, of course, is a root cause of utilities' difficulties. *See Maine Public Service Co. v. Federal Power Commission,* 579 F.2d 659, 661 (1st Cir. 1978).

3. Edison pointed to its deferred fuel cost accounting as evidence of the true nature of its fuel adjustment clause. While Edison's accounting procedure may have been consistent with its view of the clause as a cost of service tariff, it was not of controlling significance. The accounting procedure was adopted some months after the clause and, as the Commission noted, accomplished another goal—enabling Edison to show a more favorable financial position. Under such circumstances, a utility's choice of accounting method does not determine the nature of the filed rate. *Public Service Co. of New Hampshire v. Federal Energy Regulatory Commission, supra,* 195 U.S. App.D.C. at 137, 600 F.2d at 951.

4. The author of this opinion, who was a member of the panel in *Maine Public Service,* speaking for himself only, makes the following further comment: *Maine Public Service* must be read in light of the presentation the Commission made at the time. In arguing the case, the Commission ill-advisedly, as it now agrees, chose to rest mainly upon the so-called "filed rate doctrine," as conclusively tying its hands. Since the filed-rate doctrine, standing alone, hardly compelled rejection of the surcharge, we were uncertain as to what extent the Commission's decision reflected a considered evaluation of its own and to what extent it rested on an overly restricted view of its authority and responsibilities. While the Commission had also averted to the principle against retroactive rate-making, it had not sufficiently undertaken the analysis needed to establish the predicate to the application of that principle. What was missing in the Commission's presentation was a coherent analysis of the character and functioning of the superseded fuel clause. Whether the clause could properly be viewed as an actual deferred billing mechanism (*i. e.* , a cost of service tariff) or not was a question we felt the Commission had not sufficiently addressed and, because of its expertise, should have addressed. Because of our doubt whether the

*Public Service* and has concluded that the surcharge should not be allowed. The Commission also indicates that it still adheres to at least part of its prior legal analysis, and now presents cogent arguments for this position, but its decision distinctly states that under either its legal or its policy analysis the surcharge falls.

At the root of the Commission's decision is the determination that, as between customer and utility, it is the utility which should bear the risk of any under recovery stemming ultimately from the utility's choice of fuel adjustment clause. The Commission stated:

"[T]he self-inflicted nature [Edison's] alleged undercollection [is] readily apparent. As noted earlier, although the general purpose of fuel adjustment clauses is to make the utility whole for its fuel costs, the burden is on the utility to design and file a fuel clause which will effect such a result. At the time Edison adopted its superseded fuel adjustment clause, it was free to select a fuel clause which operated like a cost of service tariff and provide for the exact recovery of all full expenses incurred. Instead, however, Edison selected a fuel clause similar to a fixed-rate tariff—using past costs as a test period to calculate current costs. A characteristic of this type of tariff is the fact that costs established in the test period may prove to be different from those actually experienced thereby resulting in overcollections or undercollections by the utility . . . . The fact that Edison may not have fully recovered its fuel costs was a result of its choice of fuel clause. Therefore, Edison and not its customers should bear the consequences of its filed rate. It is not the purpose of fuel adjustment clauses to relieve utilities of all the risks of doing business. [Footnotes omitted.]"

As there can be no doubt in the present case that the Commission has faced up to its responsibility to decide the propriety of this type of surcharge as a matter of regulatory policy, and has reached a decision not inconsistent with the Federal Power Act, *see Federal Power Commission v. Sierra Pacific Power Co.,* 350 U.S. 348, 355, 76 S.Ct. 368, 100 L.Ed. 388 (1956) (suggesting utility is not to be relieved of improvident rate unless it is so low as to effect adversely the public interest); *cf. Federal Power Commission v. Tennessee Gas Co.,* 371 U.S. 145, 153, 83 S.Ct. 211, 9 L.Ed.2d 199 (1962) (indicating that under the Natural Gas Act a utility must "shoulder the hazards" of losses when filed rate is inadequate), we affirm its decision.

*Affirmed.*

---

Commission had rested its decision on valid grounds we remanded, in accordance with *SEC v. Chenery Corp.,* 318 U.S. 80, 87–90, 63 S.Ct. 454, 87 L.Ed. 626 (1943), and *City of Hunting-* *burg v. Federal Power Commission,* 162 U.S. App.D.C. 236, 242, 246, 498 F.2d 778, 784, 788 (D.C.Cir.1974), for a clarification and expansion of the Commission's views.