**MAINE PUBLIC SERVICE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 79–1630.**

United States Court of Appeals, First Circuit.

Argued May 8, 1980.

Decided June 6, 1980.

David R. Poe, with whom Roger A. Putnam, Portland, Maine, Leon A. Allen, Jr., Washington, D. C., Steven H. Davis, Verrill & Dana, Portland, Maine and LeBoeuf, Lamb, Leiby & MacRae, Washington, D. C., were on brief, for petitioner.

Lynn N. Hargis, Asst. Gen. Counsel, with whom Robert R. Nordhaus, Gen. Counsel and Jerome M. Feit, Acting Deputy Sol., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

Once again this court is faced with a question concerning the legality of the fuel adjustment surcharge collected by Maine Public Service Company (MPSC) from its wholesale customers in 1975–76. The object of the surcharge was to recover fuel costs which had been incurred by MPSC but not collected from its customers when MPSC in 1975 switched from one fuel adjustment clause to another. Under the earlier clause, a customer's monthly bill had been calculated on fuel prices averaged over the twelve month period ending the second month preceding the billing month. The result, in a period of rising fuel prices, was that customers' bills were based on unrealistically low price data and hence MPSC was not recovering its full fuel costs. To remedy the situation, MPSC adopted a new fuel adjustment formula whereby customers' bills were based on the price of fuel just one month prior to the billing month. However, unbilled fuel costs which had built up under the old formula remained uncollected, and the surcharge was instituted to recover these costs.

The Commission originally ordered MPSC to refund the surcharge. This court vacated the Commission's order disallowing the surcharge and remanded for further proceedings. *Maine Public Service Co. v. Federal Power Commission*, 579 F.2d 659 (1st Cir. 1978) (hereinafter *Maine I*). The Commission's decision had rested in part on the theory that the so-called filed rate doctrine of *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951), had so completely tied the Commission's hands as to preclude its allowing the surcharge. We disagreed with the Commission's absolutist legal analysis, 579 F.2d at 665–67, and, because we were unable to tell to what extent that analysis infected its order, we remanded for further consideration, *id.*, 669–70, and directed the Commission to undertake a policy analysis to determine whether the surcharge was "just and reasonable," *id.*, 668.

The Commission, without affording MPSC an additional hearing or opportunity to submit further data, arguments, or briefs, considered the surcharge along the lines called for in *Maine I* and again concluded the surcharge should be disallowed. MPSC petitioned the Commission for rehearing advancing much the same argument it now asserts before this court and also contending that MPSC should be given a hearing before the Commission in order to develop the record in light of the newly emerged standards governing fuel adjustment surcharges. The Commission, rejecting MPSC's arguments and concluding that MPSC had failed to raise any material facts which could affect the Commission's decision and therefore would merit an airing in a hearing, denied the application for a rehearing. MPSC then filed the instant petition for review.

Subsequent to *Maine I*, this court confronted another fuel adjustment surcharge in *Boston Edison Co. v. FERC*, 611 F.2d 8 (1st Cir. 1979). There, the Commission, after undertaking the policy appraisal called for in *Maine I* and presenting a more cogent legal analysis, disallowed Boston Edison's surcharge, and this court upheld the Commission's decision. The Commission's reasoning for striking down MPSC's surcharge is largely a reiteration of the position this court sustained in *Boston Edison*.

MPSC first argues that the Commission failed to comply with this court's directive in *Maine I*. We cannot agree. In *Maine I*, we stated that the validity of the surcharge presented a "close issue of rate-making policy which Congress expected the Commission, not the courts, to resolve: the ultimate source of an answer must lie in the Commission's own expert appraisal of whether such a surcharge is 'just and reasonable.'" 579 F.2d at 668. On remand, the Commission did undertake a sufficient policy analysis although, in a footnote, it also stated that it believed its prior reasoning was correct.

In *Maine I*, this court criticized the Commission for failing to discuss "the effect of the surcharge on the reasonable expecta-

tions of wholesale and retail consumers, on the one hand, and the legitimate needs of the utility if it is to continue to serve the community efficiently, on the other." 579 F.2d at 669. MPSC contends the Commission's attention to these factors on remand was, at best, superficial and perfunctory. The Commission, based primarily on the language of MPSC's old fuel adjustment clause, determined the clause was a fixed rate tariff and not a cost of service tariff. While the latter type of clause provides for an exact recovery of fuel costs on a deferred basis, the former does not. Rather, under a fixed rate tariff, a prior period's fuel cost are used as the most recent test period to calculate a customer's current month's fuel adjustment bill. The formula may result in under or over collection by the utility, but once the customer has paid the bill, nothing more is owed. *Boston Edison Co. v. FERC*, 611 F.2d at 9; *Public Service Company of New Hampshire v. FERC*, 600 F.2d 944, 948 (D.C.Cir.1979), *cert. denied*, 444 U.S. 990, 100 S.Ct. 520, 62 L.Ed.2d 419. The Commission determined that MPSC's wholesale customers, operating under the fixed rate tariff, "had a reasonable expectation that upon payment of their monthly bills, they had completely satisfied their obligation to Maine for the services received." MPSC argues that because its customers did not intervene, and no evidence concerning their expectations was received, the Commission's determination is not supported and is not in accordance with the evaluation called for in *Maine I*. We are not persuaded, however, that it was inappropriate for the Commission to gauge the customers' expectation on an objective basis from the language of the fuel adjustment clause, rather than to allow subjective testimony.

Nor did the Commission ignore the financial impact on MPSC of disallowance of the surcharge. The Commission noted that the unrecovered fuel expenses under the old fuel adjustment clause equaled approximately 20 percent of MPSC's 1975 annual wholesale revenues but less that 3 percent of its total annual revenues. Contrary to Maine's contention, we cannot say the Com-

mission exceeded its authority by considering MPSC's larger financial picture.

MPSC also argues the Commission failed to discuss the surcharge in terms of regulatory policy or the public interest. The Commission has taken the position that as between customer and utility, the risk of under-recovery should be borne by the utility—the one who has the obligation to design and file a clause that will produce a satisfactory recovery. That reasons may also exist for striking the balance elsewhere, or that state commissions may have allowed surcharges under similar circumstances, does not warrant this court's interference with the policy determination of the Commission—the agency to whom rate-making policy is primarily entrusted.

Our conclusion that the Commission's most recent action adequately complies with our order of remand does not mean that we are altogether happy about the agency's failure to have initiated some kind of a procedure—not necessarily a hearing but at least an invitation to submit briefs—which would have afforded MPSC an opportunity to present its position in light of this court's decision before the Commission made a decision. The Commission's eagerness to reinstate its former result unencumbered by further argument was not an ingratiating spectacle. MPSC, however, was able, in its petition for rehearing, to bring to the agency's attention both the theory and the facts it wished to establish were it granted a hearing. In all the circumstances, we see no useful purpose to be served by a remand. The Commission's refusal to hold a rehearing indicated that it rejected MPSC's approach and continued to adhere to the analysis it had announced subsequent to remand. That analysis was rooted in the Commission's determination that MPSC's superseded fuel adjustment clause was a cost of service tariff, and this determination, in turn, rested primarily on the language and operation of the clause. Nothing MPSC sought to establish would be material to the Commission's analysis which, as stated, fell within the spectrum of choices available to the agency under its broad authority in this area.

*The petition for review is denied.*